## Richmond.

### JOHN WOOD v. COMMONWEALTH.

#### November 18, 1926.

1. COURTS—*Jurisdiction of Circuit Court—Circuit Court of Albemarle—University of Virginia.*—In the instant case, a prosecution for attempted rape, it was contended that a house on the property of the University of Virginia was under the extension order of 1916, and the amended charter of the city of Charlottesville (Acts of 1922, p. 166), within the city of Charlottesville, and that the Circuit Court of Albemarle county was deprived, by section 5890 of the Code of 1919, of all criminal jurisdiction in cases arising without the city limits. The extension order provided that the property of the University of Virginia should be excluded from the line of annexation. Under section 5890 no property which is not made a part of a city can be said to be within the territorial limits of any city.

   *Held:* That the Circuit Court of Albemarle county has not been deprived, by section 5890 of the Code of 1919, of its jurisdiction in criminal cases arising on the University grounds.

2. MUNICIPAL CORPORATIONS—*Extension and Contraction of City Limits—Constitution of 1902, Section 126—Special Act—City of Charlottesville—University of Virginia.*—The Constitution of Virginia, section 126, requires the General Assembly to provide by general law for the extension and contraction of city and town limits, and declares that no special act shall be valid. In the court order of annexation of territory to the city of Charlottesville of 1916, the grounds of the University of Virginia were excluded from the territorial limits of the city. The charter of the city of Charlottesville was amended by Acts of 1920, page 285, and Acts of 1922, page 166. In these legislative amendments the boundaries of the city are given as in the court order of 1916, except that no part of the University of Virginia property is excluded therefrom.

   *Held:* That if it was intended by these amendments to include the grounds of the University of Virginia within the limits of the city of Charlottesville, the amendments are so far unconstitutional.

3. CHANGE OF VENUE—*Jury from Another County—Court Overruling the Motion of Accused—Conditions Existing at the Time of Trial—Case at Bar.*—The right of a prisoner to have a change of venue or a jury from another county depends upon the conditions existing at the

time of the trial. In the instant case the motions of accused for a change of venue and for a jury from another county were based upon an order of court removing the prisoner to a jail in another county and reciting that the sheriff had reasonable grounds to believe that an attempt would be made to take the life of or to do bodily harm to the prisoner if he was not removed from the county jail. This order stated the sheriff's views as of September and the trial was not held until the following November. No evidence was introduced to show that the jurors who tried the case were not fair and impartial.

*Held:* That there was no evidence to justify the court in changing the venue or ordering a jury from another county.

4. CHANGE OF VENUE—*Jury from Another County—Burden of Proof.*—The burden of proof is upon accused, on a motion for a change of venue or having a jury from another county, to show that the facts and circumstances are such that a fair trial cannot be had.

5. CHANGE OF VENUE—*Jury from Another County—Discretion of Trial Court.*—The trial courts are vested with large discretion when passing on a motion for a change of venue, or for a jury from another county.

6. CHANGE OF VENUE—*Jury from Another County—Overruling Motions—Impartial Jury Subsequently Selected.*—Where, as in the instant case, motions for a change of venue and for a jury from another county are based on the ground that an impartial jury cannot be obtained in the county, the fact that an impartial jury was subsequently selected therein is conclusive proof that the motion was without foundation.

7. CRIMINAL LAW—*Insanity—Inquiry into the Feeble-Mindedness of Accused—Section 4909 of the Code of 1919—Case at Bar.*—In the instant case the action of the court in refusing to inquire into the feeble-mindedness of accused under section 4909 of the Code of 1919 was assigned as error. Section 4909 of the Code of 1919 places no obligation upon the court to appoint a commission except where the court or attorney for the Commonwealth has reason to believe that the person to be tried is in such mental condition that his confinement in a hospital for the insane, or colony for the feeble-minded, for proper care and observation is necessary to attain the ends of justice.

*Held:* That while the Supreme Court of Appeals has the power to review the action of the trial court in such cases, it will not disturb its rulings unless it plainly appears that its discretion has been abused.

8. CRIMINAL LAW—*Insanity—Inquiry into Feeble-Mindedness of Accused—Section 4909 of the Code of 1919—Case at Bar.*—In the instant case, accused assigned as error the action of the court in refusing to inquire into the feeble-mindedness of accused under section 4909 of the Code of 1919. No expert testimony was introduced to show that the

accused was insane or feeble-minded, and his brother was the only witness to testify on that subject, although seven other witnesses testified in his favor.

*Held:* That there was no evidence to warrant the conclusion that the court had abused its discretion.

9.  CRIMINAL LAW—*Insanity—Inquiry into Feeble-Mindedness of Accused— Section 4909 of the Code of 1919—Case at Bar.*—In the instant case the accused was not prejudiced by the court's refusal to appoint a commission, under section 4909 of the Code of 1919, to inquire into his mental condition, inasmuch as his mental condition at the time of the commission of the offense was put in issue by his plea of not guilty, and gave him an opportunity to prove his mental condition. The verdict of guilty is a finding that the accused was sane at the time the offense was committed.

10. CRIMINAL LAW—*Insanity—Sections 1078, 1079 of the Code of 1919.*—Sections 1078, 1079 of the Code of 1919, in regard to petitions to have persons declared feeble-minded have no application where the alleged feeble-minded person is under indictment and is about to be tried for a crime. In such cases, the court having taken jurisdiction in the case, the party's sanity must be dealt with under section 4909 of the Code of 1919, or by the jury under his plea of not guilty.

11. CONFESSIONS—*Statements—Voluntary Confessions—Admissibility.*—Confessions made by accused to witnesses who testified that they offered no reward to accused, made no threats against him to induce him to make the statements, and that his statements were absolutely free and voluntary, are admissible.

12. UNIVERSITY OF VIRGINIA—*Criminal Jurisdiction over the Grounds of the University.*—The grounds of the University of Virginia are a part of the county of Albemarle and within the criminal jurisdiction of the circuit court of that county.

13. RAPE—*Attempt to Commit Rape—Evidence Sufficient to Sustain a Verdict of Guilty.*—In the instant case, a prosecution for attempted rape, the cap of accused was found in the room of prosecutrix; the evidence clearly showed that the accused committed a brutal attempt to commit rape upon the prosecutrix. The identity of the accused and his cap were fully established. The accused voluntarily confessed to two persons that he was one of the men who entered the room and made the assault.

*Held:* That a verdict of guilty could not be said to be contrary to the law and the evidence.

Error to a judgment of the Circuit Court of Albemarle county.

*Affirmed.*

The opinion states the case.

*Curry & Carter*, for the plaintiff in error.

*John R. Saunders, Attorney General, Leon M. Bazile* and *Lewis H. Machen, Assistant Attorneys General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

A jury in the Circuit Court of Albemarle county convicted John Wood, the plaintiff in error, of an attempt to rape Katherine T. Rose, and fixed his punishment at death. This is a writ of error to the judgment of the court sentencing him to be electrocuted.

Miss Katherine T. Rose and Miss Payne attended the summer school at the University of Virginia in 1925. On Saturday night, September 5, 1925, they occupied twin beds in a room on the first floor, House "D," Dawson's Row, in the University of Virginia grounds. On account of the heat, the windows in their room were left open. About two o'clock a. m. they were awakened by two colored men who had entered the room and grabbed them, pulled them out of bed down on the floor, choked and fought them, in an effort to rape them. When the ladies began to scream they threatened to cut their throats. When Miss Rose had succeeded in getting on her feet, the man who was fighting Miss Payne said to the man who was struggling with Miss Rose: "Look out, John, she is going to jump out of the window."

Miss Smith, who occupied another room in the same building, heard their screams, came and knocked on the door and the men were frightened and made their escape through the window. They left a gray cap, a

pocket knife, a hat and a package of cigarettes in the room. The day before the offense was committed the accused wore a gray cap; and after his arrest he admitted that the cap found in the room was his cap.

The accused voluntarily told a fellow prisoner, William Smith, while in jail, that he and another colored man, George Payne, entered the room through the window and that he took hold of one of the women and George Payne the other; that after the women began to scream and holler he ran and left his cap in the room; that on the next day George Payne offered him $20.00 not to tell what he had done, because he had left his knife in the room.

The first assignment of error is to the action of the court in rejecting the pleas and overruling the motions of the accused relating to the jurisdiction of the Circuit Court of Albemarle county to try the case.

There was no error in the action of the court in overruling these motions and rejecting these pleas.

In 1916, in a proceeding in the Circuit Court of Albemarle county for the purpose of extending the corporate limits of the city of Charlottesville, the city limits were extended to the property of the University of Virginia. Instead of following the boundary line of the University property, the order of the court provides that the corporate lines of the city shall pass across the University property, but further provides that no part of the University property shall be included within the corporate limits of the city and become a part thereof. The court's order on this point is contained in section eleven of the decree of annexation which reads as follows:

"Eleven: It is further ordered, on motion of the rector and visitors of the University of Virginia, the city of Charlottesville assenting thereto, that the

grounds, walks, driveways and all the lands belonging to said body, politic or corporate, the corporate name of which is: 'The rector and visitors of the University of Virginia,' although embraced within the lines of this annexation, shall nevertheless be deemed to be excluded therefrom and shall be, remain and continue in all respects and for all purposes a part of the county of Albemarle, as fully as if the same were not included within the limits of this annexation."

The Virginia Code, section 5890, provides as follows:  The circuit court shall not have "any original or appellate jurisdiction in criminal cases arising within the territorial limits of any city wherein there is established by law a corporation or hustings court."

Charlottesville has a corporation court.

The accused contends that House "D," Dawson's Row, is within the corporate limits of the city as fixed by the extension order and by the last amended charter of the city (Acts 1922, p. 166), and that the Circuit Court of Albemarle county is deprived by section 5890, *supra*, of all criminal jurisdiction in cases arising within said limits.

[1] The extension order and section 5890, when properly construed, do not sanction this contention. The order says the property of the University of Virginia is excluded from the lines of annexation, which is equivalent to saying that the "territorial limits" of the city extends to the existing boundary line of the University property and no further, thus leaving all of the University grounds outside of the city limits. Under section 5890, *supra*, no property which is not made a part of the city can be said to be "within the territorial limits of any city."

It follows that the Circuit Court of Albemarle county has not been deprived, by section 5890, *supra*,

of its jurisdiction in criminal cases arising on the University grounds.

The charter of the city of Charlottesville was amended by the legislature of 1920 and 1922. Acts 1920, page 285; Acts 1922, page 166. It is conceded that in these legislative amendments the boundaries of the city are given as in the court order of 1916, except that no part of the University of Virginia property is excluded therefrom.

[2] The accused contends that by virtue of these amendments House "D," Dawson's Row, is within the corporate limits of the city of Charlottesville and that the Corporation Court of the city of Charlottesville has exclusive jurisdiction of the instant case.

The Constitution of Virginia, section 126, requires the General Assembly to provide by general law for the extension and contraction of city and town limits, and declares that no special act shall be valid. The legislature has complied with this mandate of the Constitution. Chapter 120, Code of Virginia.

In 1914 the legislature amended the 1908 charter of the town of Narrows (Acts 1914, c. 327) so as to add additional territory and new inhabitants. The act of 1914 was attacked on the ground that it violated section 126 of the Constitution. This court, in *Town of Narrows* v. *Giles County*, 128 Va. 572, 105 S. E. 82, held that so much of "section 1 as embraces the new territory and the new inhabitants thereof is plainly in violation of section 126 of the Constitution, and therefore null and void."

[3] The second and third assignments of error relate to the action of the court in overruling the accused's motion for a change of venue and for a jury from another county.

The accused, to sustain each of these motions, relies

on the fact that the judge of the court entered an order on September 9, 1925, removing the prisoner to Henrico county jail, reciting that the sheriff of the county had reasonable grounds to believe that an attempt would be made by certain persons to take John Wood from the custody of the sheriff, "with intent to take the life of, or to do bodily injury to, the said Wood;" and that the jail of said county was not in a condition sufficiently safe properly to protect the prisoner.

This order stated the sheriff's views as of September 9, 1925, and the trial was not held until the following November. The right of a prisoner to have a change of venue or a jury from another county depends upon the conditions existing at the time of the trial. *Looney's Case,* 115 Va. 921, 78 S. E. 625. Prejudice against the accused, if any existed, may have largely subsided in two months.

[4, 5, 6] The burden is upon him to show that the facts and circumstances are such that a fair trial cannot be had. *Wright's Case,* 114 Va. 872, 77 S. E. 503. The trial courts are vested with large discretion when passing on a motion for a change of venue, or for a jury from another county. *Thompson* v. *Comth.,* 131 Va. 847, 109 S. E. 447; *Rudd* v. *Comth.,* 132 Va. 783, 111 S. E. 270; *Parsons* v. *Comth.,* 138 Va. 764, 121 S. E. 68; *Looney* v. *Comth., supra.* And where, as in the instant case, the motion is based on the ground that an impartial jury cannot be obtained in the county, the fact that an impartial jury was subsequently selected therein "is conclusive proof that the motion was without foundation." *Taylor's Case,* 122 Va. 886, 94 S. E. 795. No evidence was introduced to show that the jurors who tried the case were not fair and impartial. There was no evidence to justify the

court in changing the venue or ordering a jury from another county.

[7, 8, 9] The fourth assignment of error is to the action of the court in refusing to inquire into the feeble-mindedness of the accused, on his motion and on the petition of his brother.

The motion was that the court appoint one or more physicians, skilled in the diagnosis of feeble-minded, to examine the accused and report his condition to the court under section 4909, Code of Virginia.

Section 4909 reads in part as follows: "If, prior to the time for trial of any person charged with crime, either the court or attorney for the Commonwealth has reason to believe that such person is in such mental condition that his confinement in a hospital for the insane or a colony for the feeble-minded is necessary for proper care and observation, the said court or the judge thereof may, after hearing evidence on the subject, commit such person to the department for the criminal insane at the proper hospital, under such limitations as it may order, pending the determination of his mental condition, and in such case the court, in its discretion, may appoint one or more physicians skilled in the diagnosis of insanity, or other qualified physicians, and when any person is alleged to be feeble-minded may likewise appoint persons skilled in the diagnosis of feeble-mindedness, not to exceed three, to examine the defendant before such commitment is ordered, and make such investigation of the case as they may deem necessary, and report to the court the condition of the defendant at the time of their examination.    *    *

"If a court, in which a person is held for trial, see reasonable grounds to doubt his sanity or mentality at the time at which, but for such a doubt, he would

be tried, it shall suspend the trial and proceed as prescribed in the foregoing paragraph or until a jury inquires into the fact as to the sanity or mentality of such person.   *   *"

It is clear that this section places no obligation upon the court to appoint a commission except where the court or attorney for the Commonwealth has reason to believe that the person to be tried is in such mental condition that his confinement in a hospital for the insane, or colony for the feeble-minded, for proper care and observation is necessary to attain the ends of justice.   They observed the accused in the court and heard all the evidence offered on the question of his mentality, but neither the court nor the attorney for the Commonwealth entertained such belief.

After hearing the evidence, the court may, in its discretion, commit such person to the department for the criminal insane, at the proper hospital, pending the determination of his mental condition.   While this court has the power to review the action of the trial court in such cases, it will not disturb its ruling unless it plainly appears that such discretion has been abused. No expert testimony was introduced to show that the accused was insane or feeble-minded, and his brother was the only witness to testify on that subject, although seven other witnesses testified in his favor.   We find nothing in the record to warrant the conclusion that the court has abused its discretion in the premises. The accused was not prejudiced by the court's refusal to appoint the commission inasmuch as his mental condition at the time of the commission of the offense was put in issue by his plea of not guilty, and gave him an opportunity to prove his mental condition. The verdict of guilty is a finding that the accused was sane at the time the offense was committed.

The petition was filed under sections 1078 and 1079 of the Code. These sections have no application where the alleged feeble-minded person is under indictment and is about to be tried for a crime. In such cases, the court having taken jurisdiction in the case, the party's sanity must be dealt with under section 4909, *supra*, or by the jury under his plea of not guilty.

These assignments are likewise without merit.

[11] The fifth assignment of error relates to the action of the court in admitting alleged confessions of the accused, made by him to William Smith, John Jones and John F. Wiley; and the court's refusal to strike out the alleged confessions contained in the testimony of the said Smith, Jones and Wiley.

The record shows that the circuit court, with the consent of the attorney for the Commonwealth, struck out all questions asked by the detective, John F. Wiley, and all answers to the same.

Willie Smith and John Jones, deputy sheriff, both testified that they offered no reward to John Wood and made no threats against him to induce him to make the statements which he made to them, and that his statements were absolutely free and voluntary. Wood first confessed to Willie Smith, his cell mate, who told Deputy Sheriff Jones, to whom he later made the same statement. To each of them Wood stated that he and George Payne entered the room through an open window and assaulted the ladies, and when the ladies began to scream they got scared and ran away. He also said he lost his cap and George Payne lost his knife in the room and gave a description of Payne's knife, which tallied with the knife found in the room.

The circuit court properly refused to strike out the confessions made to Smith and Jones.

[12] The sixth assignment of error is to the action of the court in instructing the jury that the grounds of the University of Virginia are a part of the county of Albemarle and within the jurisdiction of the circuit court of that county.

For the reasons stated in discussing the first assignment of error, the court committed no error in giving the instruction complained of.

The seventh assignment of error is to the action of the court in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

[13] In view of what is set forth in the statement of facts and in the discussion of the evidence in disposing of the other assignments of error, it seems unnecessary to rehearse the evidence in detail under this assignment.   Suffice it to say that the evidence clearly shows that the accused made a brutal attempt to commit rape upon the prosecutrix, Katherine T. Rose, and would probably have accomplished his purpose but for the arrival of Miss Smith.   The identity of the accused and of his cap has been fully established. He voluntarily confessed to two persons that he was one of the men who entered the room and made the assault.

The conflicts in the evidence were settled by the jury, and there is ample evidence to support their verdict.   The judgment will be affirmed.

*Affirmed.*