## Richmond

### LANVEE IRBY TILTON AND GROVER WILLIE NEWMAN v. COMMONWEALTH OF VIRGINIA.

January 17, 1955.

Record No. 4333.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*J. L. Tompkins*, for the plaintiffs in error.

*J. Lindsay Almond, Jr., Attorney General* and *Henry T. Wickham, Special Assistant Attorney General*, for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

This writ of error brings to us for review a final judgment of the court below by which Lanvee Irby Tilton, aged seventeen, and Grover Willie Newman, aged twenty-three, were sentenced to death by electrocution after each had pleaded guilty to an indictment for murder. The determination of the questions presented requires a full statement of the proceedings below, as well as the undisputed underlying facts.

On the afternoon of February 10, 1954, T. Eldridge Bunn was found shot to death in his store near Hillsville in Carroll county. Suspicion was directed toward Tilton and

Newman and they were arrested the same afternoon and lodged in jail. At first they denied their guilt, but during the night they separately confessed to the sheriff and the Commonwealth's attorney that pursuant to their prearranged plan they went to the store for the purpose of shooting and robbing Bunn. Each was armed with a .22 rifle. Upon entering the store Newman "set his gun down beside the door" while Tilton held his rifle. As Bunn was in the act of placing on the counter some articles of merchandise which the defendants had ordered, Tilton shot him twice in the face and again in the head. The defendants took a total of $33 from the cash drawer and the billfold on Bunn's body.

On the day following the killing separate warrants were procured for the defendants and served on them in jail. Upon examination the trial justice held the two defendants for the grand jury. Separate indictments were found against them at the March, 1954, term. On March 15 the two indictments were heard together, the defendants being represented by counsel of their choosing. Two motions were made on behalf of the defendants:

(1) That the indictment against Tilton be quashed "because he had not been tried before the Trial Justice of Carroll County, sitting as the Juvenile and Domestic Relations Court Judge;" and

(2) That each defendant be "examined by one or more physicians skilled in the diagnosis of insanity in accordance with section 19-202."

The court overruled the first motion and counsel for the defendant, Tilton, excepted, as the order states, on the ground that there had been no compliance with Code, §§ 63-268, 63-273, and 63-288.

In support of the second motion the defendant, Tilton, offered as a witness the sheriff, C. I. Jackson, who testified that "Tilton told me on one occasion that he had seen a little devil in his cell. He was kindly (sic) laughing about it. He had been in a cell away from the other prisoners

and after this I moved him to another cell and put Newman in the cell Tilton had been in. I heard nothing further from him. This did not indicate to me that he was mentally ill. It appears to me a fairly normal reaction after the crime that he had committed." There was no evidence in support of the motion on behalf of Newman.

In overruling the motion for mental examinations of the two defendants the order recites that "the court is of opinion that Tilton is sane and that there is no reason to believe that he is mentally ill or for any reason incapable of being tried." The order recites no finding as to the defendant, Newman.

On the same day the case came on to be tried on the merits. Each defendant, after having consulted with and been advised by counsel, pleaded guilty to the indictment and waived trial by jury. (Cf. Const., § 8.) Thereupon the court heard the evidence, including the confessions of the two defendants, the testimony of the coroner that death was caused by the rifle bullets which had been fired into Bunn's head, and the testimony of an agent of the Federal Bureau of Investigation that the two bullets taken from the body of the deceased had been fired by Tilton's rifle.

Tilton's mother testified that he was seventeen years old on the day of the trial.

Upon consideration of the evidence the court found both defendants guilty of murder in the first degree, as charged in the indictments. Pursuant to Code, § 53-278.1 (as amended by Acts 1952, ch. 233, p. 319), upon motion of the defendants, before fixing punishment or imposing sentence, the court directed its probation officer "to thoroughly investigate and report upon the history of both of the accused, * * * and any and all relevant facts to the end that the court may be fully advised as to the appropriate and just sentence to be imposed."

On March 30 the probation officer appeared in open court and read his written report in the presence of the two defendants and delivered a copy thereof to their counsel.

Counsel for the defendants was given the right, but declined, to cross-examine the probation officer as to any matters contained in the report.

In his report the officer found no "extenuating circumstances" on behalf of either defendant. Their only excuse for the crime was that they wanted the money which they expected to receive from the robbery. The report shows that Tilton was reared by a widowed mother. He "was almost 17 years of age at the time this offense was committed, seems to be a fairly intelligent boy. He was old enough and intelligent enough to know right from wrong and to realize the seriousness of the offense he committed."

After considering the evidence and probation report the court sentenced both defendants to death by electrocution. Whereupon Newman remarked to the court, "May you die with your boots on, you God damn son of a bitch." Upon the pronouncement of sentence Tilton remained mute.

The sufficiency of the evidence to establish the finding that the defendants were guilty of murder in the first degree is not challenged. It shows beyond doubt a "wilful, deliberate and premeditated killing" within the statutory definition of that offense (Code, § 18-30), for which the extreme penalty may be exacted. Code, § 18-31.

■ The only assignment of error applicable to Newman is that "the court abused its discretion in refusing an order for each defendant to be examined by one or more physicians skilled in the diagnosis of insanity, in accordance with section 19-202." At the time of the trial[1] Code, § 19-202, read:

"*When question of sanity raised, commitment before trial.*
—If, prior to the time for trial of any person charged with crime, either the court or attorney for the Commonwealth has reason to believe that such person is in such mental condition that his confinement in a hospital for the insane or a colony for the feeble-minded is necessary for proper

---

[1] This section was amended by Acts of 1954, ch. 229, p. 267, which became effective after the trial.

care and observation, the court or the judge thereof may, after hearing evidence on the subject, commit such person, if a white person, to any State hospital for the insane best adapted to meet the needs of the case * * * , pending the determination of his mental condition. In any such case the court, in its discretion, may appoint one or more physicians skilled in the diagnosis of insanity, or other qualified physicians, and when any person is alleged to be feeble-minded may likewise appoint persons skilled in the diagnosis of feeble-mindedness, not to exceed three, to examine the defendant before such commitment is ordered, make such investigation of the case as they may deem necessary and report to the court the condition of the defendant at the time of their examination. * * * "

In *Wood* v. *Commonwealth*, 146 Va. 296, 135 S. E. 895, we pointed out that this section places no obligation upon the trial court to appoint a commission for the examination of an accused except where the court or attorney for the Commonwealth has reason to believe that the accused is in such mental condition that his confinement in a hospital for the insane, or colony for the feeble-minded, for proper care and observation is necessary to attain the ends of justice. Moreover, we said that while the appellate court has the power to review the action of the trial court in refusing to commit persons pursuant to this section, it will not disturb the trial court's ruling unless it plainly appears that there has been an abuse of discretion. (146 Va., at page 305.) See also, *Delp* v. *Commonwealth*, 172 Va. 564, 571, 200 S. E. 594, 596.

Here there was no showing that the court or attorney for the Commonwealth had reason to believe that either defendant was in such mental condition that his confinement in an institution for care and observation was necessary to attain the ends of justice. Indeed, as has been said, there was no evidence at all in support of the motion on behalf of Newman. On behalf of Tilton, a single witness, the sheriff, merely testified that Tilton told him in a joking manner

that on one occasion "he had seen a little devil in his cell." Clearly, then, there is no basis for the assignment that the trial court abused its discretion in refusing to order a mental examination of the defendants under this section.

The other errors assigned on behalf of the defendant, Tilton, are:

(1) That he "was not tried before the Trial Justice of Carroll County sitting as a Juvenile and Domestic Relations Court Judge;" and

(2) That "the court failed to require a full and complete investigation of the physical, mental and social condition and personality of Lanvee Irby Tilton and the facts surrounding the violation of the law which is the cause of his being before the court," under the "mandatory" provisions of Code, § 16-172.42.

The argument under the first point is that the trial court, under the provisions of Code, 1952 Cum. Supp., § 16-172.41, should have transferred the case to the trial justice sitting as the juvenile court for disposition. This section reads:

"*Transfer from other courts.*—If during the pendency of a criminal or quasi-criminal proceeding against any person in any other court it shall be ascertained that the person was under the age of eighteen years at the time of committing the alleged offense, such court shall forthwith transfer the case, together with all papers, documents and evidence connected therewith, to the juvenile court of the city or county having jurisdiction, *provided if such is pending in a court of record, the judge thereof, in his discretion, may continue with the trial thereof.* The court making the transfer shall order the child or minor to be taken forthwith to the place of detention, designated by the juvenile court or by the transferring court, or release on bail or otherwise the child or minor to the custody of some suitable person to be brought before the juvenile court at the time designated." Acts 1950, p. 677. (Italics supplied.)

This provision came into our statute law as section 39 of House Bill 520, Acts of 1950, ch. 383, p. 677. As intro-

duced, the section made mandatory the transfer of a pending criminal proceeding against a person under the age of eighteen years from a court of record to the juvenile court. It was designed to change the holding in *Mickens* v. *Commonwealth*, 178 Va. 273, 16 S. E. (2d) 641, that under the former statutes such transfer was not mandatory.

The report of the Virginia Advisory Legislative Council, dated November 30, 1949, on the proposed bill carried this comment: "Another striking weakness in our present law appears to be the question of jurisdiction. This was brought to the fore in a recent case involving an aggravated crime, when upon appeal to the Supreme Court of Appeals it was held that a child could be indicted and tried without the necessity of any proceedings of a preliminary nature in the Juvenile and Domestic Relations Court." (Sen. Doc. No. 9, 1950 Sess., p. 5.) To correct this situation, the report says, the proposed bill "provides for the transfer from other courts to the juvenile court of cases that might through error, or for some other reasons, have originated in another court." (Sen. Doc. No. 9, 1950 Sess., p. 8.)

However, the General Assembly did not adopt this suggestion and amended section 39 (§ 16-172.41) by the addition of the italicized proviso. Thus, in its form as enacted, such transfer is not mandatory and the judge of the court of record in which such a case is pending, "in his discretion, may continue with the trial thereof." We find, then, no merit in this assignment.

The main contention urged on behalf of the defendant, Tilton, is that the court erred in not requiring prior to trial the examination provided for in the final sentence of Code, 1952 Cum. Supp., § 16-172.42. The section as it stood at the time of trial[2] read thus:

"*Transfers to other courts.*—If a child fourteen years of age or over is charged with an offense which, if committed by an adult, could be punishable by confinement in the

---

[2] This section was amended by Acts of 1954, ch. 599, p. 768, which became effective after the trial.

penitentiary the court after full investigation and hearing may, in its discretion, retain jurisdiction or certify such child for proper criminal proceedings to the appropriate court of record having criminal jurisdiction of such offenses if committed by an adult; provided, however, that in the event the juvenile court does not so certify a child fourteen years of age or over, charged with an offense which, if committed by an adult, would be punishable by death or confinement in the penitentiary for life or a period of twenty years or more, the Commonwealth's attorney of the city or county, if he deems it to the public interest, may present the case to the grand jury of the proper court of record. If the grand jury returns a true bill upon such indictment the jurisdiction of the juvenile court as to such case shall terminate. In no case shall any child under the age of fourteen be so certified, nor shall any such child be indicted or tried under the criminal laws of this State. The ages specified in this section refer to the age of the child or minor at the time of the alleged commission of the offense. *In all cases under this section, the court shall require a full and complete investigation of the physical, mental and social condition and personality of the child or minor and the facts and circumstances surrounding the violation of the law which is the cause of his being before the court.*"[3] Acts 1950, p. 678; 1952, p. 707. (Italics supplied.)

So far as the record discloses this provision of the law was not brought to the attention of the trial court. It was urged there that an examination should be had under Code, § 63-288. That section provides: "The court, in its discretion, either before or after a hearing, may cause any child within its jurisdiction to be given a physical and mental examination by a competent physician or physicians or an approved mental examiner, to be designated by the court having jurisdiction of such child, * * *."

---

[3] By the Acts of 1950, p. 678, the italicized provision was put in section 41 (§ 16-172.43), but made applicable to "all cases under the next preceding section." By Acts of 1952, p. 707, it was put in its present logical position in § 16-172.42.

As has been said, it was also urged in the trial court that the indictment be quashed on the ground that the "proceedings" against this defendant had not been commenced in accordance with the provisions of section 63-268, and that his parent had not been "notified," as required by section 63-273, of the pendency of the warrant against him in the trial justice court. The order overruling the motion recites that since the mother of this defendant knew of the pendency of the warrant the requirements of section 63-273 had been met.

Thus, both counsel and the trial court overlooked the fact that sections 63-288, 63-268 and 63-273 had been repealed by Acts of 1950, ch. 383, p. 690, and superseded by the provisions of that chapter as amended by Acts of 1952, ch. 419, p. 702. (Code, 1952 Cum. Supp., § 16-172.1 ff.) Plainly the applicable statutes in force governing the trial of juveniles were not brought to the attention of the trial court.

The 1950 Act, providing for a state-wide system of juvenile and domestic relations courts and the trial of juveniles, was enacted by the General Assembly after a careful study and report by the Virginia Advisory Legislative Council. (Sen. Doc. No. 9, 1950 Sess., *supra*.) In the Act directing such study the General Assembly said: "The public policy of Virginia has been to provide for the correction of youthful offenders rather than to rely upon punitive methods." Acts 1948, ch. 390, p. 766.

With respect to the "purpose and intent" of the statute which was enacted the General Assembly said: "This law shall be construed liberally and as remedial in character; and the powers hereby conferred are intended to be general to effect the beneficial purposes herein set forth. It is the intention of this law that in all proceedings concerning the disposition, custody or control of children coming within the provisions hereof, the court shall proceed upon the theory that the welfare of the child is the paramount concern of the State * * *." Code, 1952 Cum. Supp., § 16-172.1; Acts 1950, p. 665, 1952, p. 703.

Section 16-172.42 deals with the transfer of cases from juvenile courts "to other courts." Under its provisions if a child fourteen years of age or over is charged with an offense "punishable by confinement in the penitentiary," the juvenile court "after full investigation and hearing" may retain jurisdiction of the child or certify him "to the appropriate court of record having criminal jurisdiction of such offenses if committed by an adult." But should the offense be punishable by death or confinement in the penitentiary for life or a period of twenty years or more, and the child is not certified to the court of record, the Commonwealth's attorney "may present the case to the grand jury of the proper court of record." If a true bill is returned upon such indictment "the jurisdiction of the juvenile court as to such case shall terminate." That was the procedure followed in the present case.

The section closes with the provision requiring, "In all cases under this section, the court shall require a full and complete investigation of the physical, mental and social condition and personality of the child," etc.

The Attorney General argues that the juvenile court alone is charged with the duty of requiring this investigation, and that since under the terms of the section, upon the finding of a true bill upon the indictment, the jurisdiction of the juvenile court is terminated, the provision requiring the investigation becomes inoperative.

This argument violates the elementary rule of statutory construction that every provision in or part of a statute shall be given effect if possible. Clearly the section charges some court with the duty of carrying out the provision. The language embraces "all cases under this section," including those which like the present case are commenced by an indictment in a court of record, as well as those which are certified to it by the juvenile court and those which are retained by the juvenile court. The direction is mandatory for the language is the court "shall require" the specified "full and complete investigation."

It may be noted in passing that if the juvenile court alone is charged with the duty of making the required investigation, then the court of record is charged with the duty of referring the case to the juvenile court for that purpose. Otherwise a vital provision in the statute cannot be given effect.

But we do not agree with the argument that "in all cases" the juvenile court alone is charged with the duty of executing the provision. The basis for that argument is the statutory definition in section 16-172.3 which reads: "When used in this law, *unless the context otherwise requires*: (1) 'The court' or the 'juvenile court' means the juvenile and domestic relations court' of each county or city; * * *." Acts 1950, p. 666. (Italics supplied.) But the qualifying italicized words are significant, and there are many instances in the 1950 Act, as amended, in which the context shows that "the court" was not intended to mean the juvenile court. We think that under the proper interpretation of section 16-172.42 the court having jurisdiction of the case, whether it be the juvenile court or the court of record, is charged with the duty and responsibility of requiring the investigation. When, as in the present case, the prosecution against a child has been commenced by an indictment in a court of record that court is charged with the duty of executing the provision.

This view is supported by the fact that the provision requiring such investigation "in all cases" is placed in section 16-172.42 following the direction for the termination of the jurisdiction of the juvenile court upon the finding of a true bill upon an indictment "in a court of record." To require an investigation in the juvenile court whose jurisdiction has terminated is, of course, meaningless.

The history of this provision requiring the investigation supports the same view. The report of the Virginia Advisory Legislative Council says that this provision "follows § 1913." (Sen. Doc. 9, *supra*, p. 22.) Section 1913 of Michie's Code of 1942 provides: "The court, in its dis-

cretion, either before or after a hearing, may cause any child within its jurisdiction to be given a physical and mental examination by a competent physician or physicians or an approved mental examiner to be designated *by the court having jurisdiction of such child,* * * *." (Italics supplied.)

This provision originated in the Acts of 1914, ch. 350, p. 698, which provided: "Every child coming within the provisions of this act may be subjected to a physical and mental examination by a competent physician or physicians or other mental diagnostician, to be appointed by *the court, judge or justice having jurisdiction of the case,* * * *." (Italics supplied.) The provision became section 1910 of the Code of 1919.

By Acts of 1922, ch. 481, p. 825, section 1910 of the Code of 1919 was rewritten and became section 1913 of Michie's Code of 1942. Section 1913 became section 63-288 of the Code of 1950, the Code Commission having changed the provision for appointment of a physician "by the court, judge or justice having jurisdiction of the case" to read "by the court having jurisdiction of such child."

Thus, the history of the provision shows that the authority to require the investigation is lodged in the court "having jurisdiction of the case" or "jurisdiction of such child." Hence, if the case is pending before the juvenile court such authority and duty are lodged with the judge of that court. If, on the other hand, the jurisdiction of the juvenile court has terminated, the authority and duty to require such investigation are lodged with the "proper court of record" having jurisdiction of the case.

But it should be observed that whereas in the former statutes the authority to require such examination was *discretionary*, the requirement under section 16-172.42 is *mandatory*.

We are of opinion that both the context and the history of the provision show that under the circumstances of this case the duty of requiring the investigation under section 16-172.42 devolved upon the circuit court below. This view

gives full effect to the provision and accords with the legislative direction that the statute "shall be construed liberally." (§ 16-172.1).

█ The reason for requiring such investigation appears in sections 16-172.41 and 16-172.43. Under the provisions of section 16-172.41, *supra,* the judge of the "court of record" may transfer a pending criminal proceeding against a juvenile to the juvenile court, or "in his discretion, may continue with the trial thereof."

Section 16-172.43 prescribes the "procedure in transfer cases." The last paragraph of that section reads: "In the hearing and disposition of cases properly before a court having general criminal jurisdiction the court may sentence or commit the juvenile offender in accordance with the criminal laws of this State or may in its discretion deal with the juvenile in the manner prescribed in this law for the hearing and disposition of cases in the juvenile court." Acts 1950, p. 678; 1952, p. 707.

In this paragraph the "court having general criminal jurisdiction" is given the authority either to "sentence or commit the juvenile offender in accordance with the criminal laws of this State," or "in its discretion deal with the juvenile in the manner prescribed in this law for the hearing and disposition of cases in the juvenile court."

Under sections 16-172.41 and 16-172.43 the discretion lodged in the court of record is a sound judicial discretion, to be exercised not arbitrarily or willfully, but based upon knowledge of facts upon which the discretion may properly operate. "[A] full and complete investigation of the physical, mental and social condition and personality of the child or minor and the facts and circumstances surrounding the violation of the law which is the cause of his being before the court," whether made under the direction of the court of record or the juvenile court, will give the court of record information upon which to exercise its judicial discretion in determining whether, under the provisions of section 16-172.41, the case should be transferred to the

juvenile court or the trial proceeded with in the court of record. Likewise, after such investigation the court of record will be in a position to exercise its sound judicial discretion in determining whether, under the provisions of section 16-172.43, the case should be disposed of "in accordance with the criminal laws of this State," or the juvenile dealt with "in the manner prescribed in this law for the hearing and disposition of cases in the juvenile court."

As has been said, these related provisions of the law were not brought to the attention of the trial court, they were not complied with, and this child who was sixteen years of age at the time of the commission of the offense, was put on trial for his life as if he had been an adult.

The provision for the required investigation in section 16-172.42 was not satisfied by the investigation and report of the probation officer which were had and made in the present case, after trial and conviction, pursuant to section 53-278.1, as amended. The investigation and report under section 53-278.1 are directed to be made after a plea of guilty or conviction, as the statute says, "to the end that the court may be fully advised as to the appropriate and just sentence to be imposed." The investigation required under section 16-172.42 has the additional and broader purpose of furnishing information from which the court may determine, in cases of aggravated offenses, whether the child should be tried as a juvenile or as an adult, and in what tribunal.

Section 8 of the Virginia Constitution guarantees to an accused, whether guilty or innocent, that "He shall not be deprived of life or liberty, except by the law of the land * * * ." In the trial of the defendant, Newman, this provision has been fully satisfied, and as to him the judgment is affirmed. In the trial of the defendant, Tilton, the constitutional provision has not been satisfied, in that he was denied the benefit of the investigation required by section 16-172.42. Accordingly, the judgment against the defend-

ant, Tilton, is reversed, the order of conviction set aside, and the case remanded for a new trial.

*Affirmed in part; reversed in part and remanded.*