**David Lee CRADLE, Petitioner,**

**v.**

**J. D. COX, Superintendent of Virginia State Penitentiary, Respondent.**

**Misc. No. 167–70–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

June 1, 1971.

**1170**

Thomas Connor, Norfolk, Va. (court-appointed), for petitioner.

W. Luke Witt, Asst. Atty. Gen., Richmond, Va., for respondent.

## MEMORANDUM ORDER

KELLAM, District Judge.

By Order of the United States Court of Appeals for the Fourth Circuit of August 20, 1970, the petition for habeas corpus in this case was remanded to this Court for further consideration in light of Kemplen v. Maryland, 428 F.2d 169 (4th Cir. 1970). Following remand, counsel was appointed to represent petitioner and a plenary hearing held on March 31, 1971.

David Lee Cradle (Cradle), a minor born February 5, 1945, was arrested at the home of his grandmother on April 24, 1962, about 2:00 o'clock a. m., upon two charges of armed robbery.[1] His grandmother[2] was then told the matter would be heard in Juvenile Court that morning—April 24, 1962—at 10:00 o'clock a. m. He was taken by the police to headquarters, where at 4:15 a. m. and

---

[1]. Pursuant to § 18.1–91 Code of Virginia, the offenses charged are punishable by death, confinement in the penitentiary for life, or any term not less than 5 years.

[2]. Cradle's mother was dead—he never knew his father.

4:55 a. m., April 24, 1962, after being fully advised of his rights, he gave statements admitting the offenses charged.

On April 24, 1962, defendant appeared before the Juvenile Court. When his grandmother did not appear, a guardian ad litem was appointed for him.[3] A transcript of this hearing and the court records establish that the two bus drivers who had been robbed merely related the facts of the robbery. They were not able to identify Cradle as one of the persons who robbed them. The matter was continued to May 22, 1962, to enable the investigation and report required by Section 16.1–164 and 16.1–176 of the Code of Virginia, to be made. The report was filed on May 22, 1962, and without further hearing, the case was certified by the Juvenile Judge to the grand jury for action.[4]

On May 11, 1962, counsel was appointed to represent Cradle. He conferred with Cradle on May 14, 1962. Cradle told his counsel he had given a voluntary statement confessing the crimes and he desired to enter a guilty plea. On June 6, 1962, Cradle gave his own counsel a written statement saying he wanted to "plead guilty." At his trial on June 11, 1962, he did enter a guilty plea to each of the charges, and was on October 16, 1962, sentenced to eight years imprisonment on each charge to run concurrently.

On September 20, 1965, Cradle filed a state habeas petition raising, among other things, the issue of lack of counsel at the juvenile hearing. After a full plenary hearing, he was denied relief. Such denial of relief was affirmed on appeal to the Supreme Court of Appeals of Virginia. 208 Va. 243, 156 S.E.2d 874. Certiorari was denied by the United States Supreme Court on July 17, 1968.

██ The Supreme Court of Appeals of Virginia held in the Cradle appeal

that *In re Gault* was not to be applied retroactively. Since that time the United States Court of Appeals for the Fourth Circuit held in Kemplen v. Maryland, 428 F.2d 169 (1970) that In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, is to be given retroactive application, and we are bound by that finding. However, in *Kemplen,* the Court pointed out that it did not appear that the granting of a new trial was the "only possible relief for the juvenile who was unconstitutionally put over to the adult criminal court." Further, the Court said the "district court may fashion various remedies to suit the procedures of the various states within the circuit and to fit the facts of particular cases." In Handy v. Director, Patuxent Institution, Memo Decision No. 13,547, 4th Cir., decided October 1, 1970, the Court said the failure to furnish counsel at the juvenile hearing would entitle the juvenile to a de novo determination of whether "waiver was appropriate."

We should first determine whether any prejudice resulted to Cradle from the absence of counsel at his juvenile hearing. At the start, it is appropriate to point out that in *In re Gault*, the Court was dealing with procedure in the Juvenile Court of Arizona which (a) did not provide for an appeal, (b) permitted hearsay testimony, which denied the right to cross-examination, (c) permitted use of an involuntary statement—juvenile not being advised of any right to remain silent, etc., and (d) the imposition of a more severe sentence for the juvenile than was permitted for an adult for the same offense. There the Supreme Court held that the trial did not comply with due process. But the Court there again, as it had done in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, pointed out that they did not intend to indicate that the "hearing to be held must conform with all of the requirements of a criminal

---

3. Section 16.1–173, Code of Virginia.

4. Pursuant to Section 16.1–176, if the Juvenile Court had not certified the case

to the grand jury, the Commonwealth's attorney could have presented the case to the grand jury for consideration.

trial or even of the usual administrative hearing" but that it must measure up to the essentials of due process and fair treatment.

█ The procedure in Cradle differs from that in *In re Gault*. It is not confined to the difference between a "confinement order" and a "certification order." In Cradle, at the time of his arrest, his grandmother, the person having custody of Cradle, and who had raised him, was advised of the charge, and that a hearing would be held the next morning at 10:00 o'clock a. m. Shortly after his arrest, Cradle gave a voluntary confession after being advised of all his rights.[5] No hearsay testimony was admitted at the hearing, and the report required by statute was ordered. The Court made no adjudication of commitment or confinement. The matter was certified to the Corporation Court for action by the grand jury, and an indictment was returned. Section 16.1–175 of the Code of Virginia provides that when in a court, other than the juvenile court, it appears a person is under the age of eighteen, that court shall transfer the case to the juvenile court, but if the court is a court of record, it may, in its discretion, after an investigation by the probation officer, or if one has been made, upon review of that report, continue with the case. This is not an arbitrary decision, but one to be based upon knowledge of facts upon which the discretion might properly operate; that is, it must be a sound judicial discretion. Tilton v. Commonwealth, 196 Va. 774, 85 S.E.2d 368; Redmon v. Peyton, 420 F.2d 822 (4th Cir. 1969).

As provided in Section 16.1–176, Code of Virginia, when a juvenile is charged with an offense which if committed by an adult would be punishable by confinement in the penitentiary, the juvenile court may retain jurisdiction or certify the juvenile for proper criminal proceedings in the court of record. That section further provides that if the offense charged, when committed by an adult, would be punishable by death or confinement in the penitentiary for life or a period of twenty years or more, and the juvenile court does not certify the case to the court of record for action, the Commonwealth's attorney may present the case to the grand jury for action, and action by the grand jury deprives the juvenile court of jurisdiction. Here, each of the two offenses charged carried punishment by death or confinement in the penitentiary for life or any term not less than five years. Code of Virginia 18.1–91.

When the matter is heard in the court of record, whether upon certification or otherwise, that court can then proceed to try the defendant as a juvenile, or as an adult. In effect, this is the first decision which that court makes, once it appears an offense has been committed and the report of the probation officer has been reviewed. Section 16.1–177, Code of Virginia. Again, the discretion to be exercised is "a sound judicial discretion," and one not to be exercised arbitrarily and wilfully, but based on knowledge of the facts.

The record of the state habeas hearing discloses that even prior to the return of the indictments by the grand jury, appointed counsel conferred with Cradle.[6] The first conference was on May 14, 1962. After counsel explained his rights, and the penalty for the offenses charged, Cradle told his counsel he wanted to enter a plea of guilty, and that he had given a statement to the juvenile police officer. The voluntariness of giving of the confessions was thoroughly discussed with Cradle, as well as the circumstances under which the statements were given. Counsel conferred with Cradle on May 14th, 15th, 16th, 21st, 23rd and June 6th. At trial on

---

5. Such a finding was made in the state habeas, after a full hearing. A review of the record establishes the finding amply supported, and that the court applied the proper law.

6. Counsel testified he was appointed on May 11, 1962.

June 11th, when Cradle entered his guilty plea, his grandmother was present. On his plea, and the evidence heard, Cradle was found guilty. Upon request of his counsel, a pre-sentence report was obtained, and he was not sentenced until October 16, 1962.

Following a remand of this federal habeas by the United States Court of Appeals for the Fourth Circuit, by Order of August 20, 1970, counsel was on November 4, 1970, appointed to assist Cradle. A plenary hearing was held on March 31, 1971, to determine whether the waiver by the juvenile court was proper when made. At the hearing petitioner offered no evidence. The Chief Probation Officer of the Juvenile Court of Norfolk testified that he was assigned to do the report called for by Section 16.1–176(b) of the Code of Virginia; that it was the usual custom and practice of that court to certify cases of this type to the court of record for disposition, and that in his opinion, even had counsel appeared for Cradle, the case would have been certified to the Corporation Court.

In the proceedings before the Juvenile Court, the two victims of the bank robbery and the juvenile police officer were the witnesses. The two victims of the robbery merely testified they were robbed, but could not identify the robbers, and the police officer testified as to the confession given. Defendant Cradle did say he had purchased a jacket and shoes with the money he had stolen, but nothing more. The matter was continued to May 22nd to enable the probation officer to make an investigation and report. The report was filed, and on May 22nd, without further hearing, the Juvenile Court certified the matter to the Corporation Court.

At the time of the proceedings in the Cradle case—April 1962—it was not the custom to appoint counsel for juveniles [7]

or any person in courts not of record. There was no provision in the Virginia statute or in Virginia case law requiring or providing for such appointment, and no provision to compensate counsel in such courts until 1964.

The Juvenile Court made a determination that two offenses of armed robbery had been committed, and that Cradle was involved therein. It ordered its probation officer to make a report on the physical, mental and social conditions and personality of Cradle and the facts and circumstances surrounding the offenses charged. The statute provides that when such a report has been made, the court "may then proceed informally." From the information before the Court, supplemented by the report, the Court made a determination to waive jurisdiction and certify the case to the Corporation Court for action and disposition. Prior to the returning of an indictment by the grand jury, counsel was appointed for Cradle. At the state habeas plenary hearing, the appointed counsel testified that after advising Cradle of his rights and the punishment for the offense, Cradle readily admitted his guilt and said he desired to enter a guilty plea. He advised he had no witnesses, and that his confession had been freely and voluntarily given. Cradle was slightly over seventeen years old at the time of commission of the offenses. He was seventeen and a half years old at the time of his sentence. From time his counsel was appointed on May 11, 1962, until the sentencing in October 1962, Cradle made no complaints to his lawyer relative to the manner in which his confession had been obtained or as to how he had been treated.

The only standard of measure of what a juvenile judge might or would have done if special or different circumstances had been called to his attention in a particular case is his past action in similar cases. The Chief Probation Officer

7. The Legislature of Virginia in April 1964 enacted legislation to provide counsel for any person charged with a felony upon their appearance in courts not of record. This antedated the decision in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84.

testified that in similar cases, whether juveniles appeared with or without counsel, the usual custom and practice was for the juvenile court to waive jurisdiction.

██ Has it been shown that Cradle was prejudiced by the lack of assistance of counsel in the Juvenile Court? We cannot speculate, but must try to reason the answer. No reason has been suggested as to why the Juvenile Court would have been expected to handle this case any differently if Cradle had appeared with counsel. The offense was clearly established, and Cradle readily gave a confession. After counsel was appointed for him, he made no claim the confession had not been freely and voluntarily given. He admitted his guilt and told his counsel he wanted to enter a guilty plea. The Juvenile Judge received the background report from the probation officer and made a determination to waive jurisdiction. But, that did not end the matter as to whether he could still be tried and sentenced as a juvenile. The Corporation Court had to decide whether to try and sentence Cradle as an adult or as a juvenile. As has been pointed out above, this was a judicial discretion to be exercised by the Corporation Court. As pointed out in Redmon v. Peyton, *supra*, quoting with approval from Tilton v. Commonwealth, *supra*, a report of the physical, mental and social conditions and personality of the minor is to be made, and "whether made under the direction of the court of record or the juvenile court, will give the court of record information upon which to exercise its judicial discretion in determining whether * * * the case should be transferred to the juvenile court or the trial proceeded with in the court of record." [420 F.2d 827.] And again in Redmon quoting from Toran v. Peyton, 207 Va. 923, 153 S.E.2d 213 (1967), where a report was made and considered by the court of record, "[W]e need not decide, however, whether Toran's hearing in the juvenile court was duly held. Code § 16.1–175 sets forth a procedure that may be followed by a court of record as a substitute for a hearing before a juvenile court." [420 F.2d 828]. Further in Redmon, in discussing the decisions of the Supreme Court of Appeals of Virginia, it was said:

The Supreme Court of Appeals has placed the emphasis on substantive protection of the rights of the accused, and not on the procedural niceties of which court should undertake to provide this protection. This, we think, is where the emphasis most appropriately should be; certainly a Federal court, finding it necessary to consider the validity of a State conviction, should inquire no further. As we said in Hill v. Peyton, No. 11,846, mem. dec. (4 Cir., June 11, 1968), dismissing the appeal from 271 F.Supp. 891 (W.D.Va.1967): "Since the requisite examinations were made prior to petitioner's trial, due process has been satisfied regardless of which court instituted them."

We find the present case to be within the rules of the Virginia cases discussed previously. Redmon was certified for trial as an adult after a hearing. Although the record fails to show whether the hearing met the statutory requirements or whether a report was ordered as required, and in fact it appears probable that these requirements were not met, the record does show that the Circuit Court corrected any errors that may have existed in the original certification.

With the aid and assistance of competent counsel, a court of proper jurisdiction, in exercise of a judicial discretion, made a determination that Cradle should be tried and sentenced as an adult. The evidence does not establish that he has suffered any prejudice. He was entitled to the assistance of counsel in having a court of proper jurisdiction determine, upon proper facts, whether he should be tried and sentenced as a juvenile. This was done in the Corporation Court. He makes no contention the Corporation Court did not properly make such a de-

termination. Considering the seriousness of the two charges, the age of Cradle, and all the facts of the case, the prior practice of the Juvenile Court, it is not unreasonable to say that had counsel appeared on behalf of Cradle, the Juvenile Court would not have followed its practice and custom and have declined jurisdiction. Even had it retained jurisdiction, we cannot say the Commonwealth's attorney would not have presented the matter to the grand jury for action.

■ The Court's attention has not been called to any fact or circumstance upon which the Court could base a finding that Cradle has been prejudiced. That is, unless the Court is to say that because the Juvenile Court followed the statute as enacted by the Legislature of Virginia, and as interpreted by the highest court of Virginia, but did not anticipate that from a case growing out of another state, whose statutes were not similar to Virginia's, the Supreme Court would interpret the provisions of the Constitution of the United States— in force for almost one hundred years— as requiring the appointment of counsel for juveniles in a juvenile court[8] to comply with due process; and such an interpretation would be made to apply retroactively. But such could hardly be, in and of itself, said to constitute prejudice to Cradle. From all the facts and circumstances of this case a waiver of jurisdiction by the Juvenile Court was appropriate and proper when originally made, and was without prejudice to Cradle.

■ In Acuna v. Baker, 418 F.2d 639 (10th Cir. 1969), a case upon facts very similar to the facts in this case, the Court held that "a voluntary plea of guilty waives prior procedural defects and constitutional infirmities." Again, in Claunch v. Page, 427 F.2d 841 (10th Cir. 1970), the Court said "[W]e have

twice held that a juvenile who was not represented by counsel in the certification proceedings and thereafter pleaded guilty waived prior procedural defects and constitutional infirmities." *See also* Chandler v. United States, 413 F.2d 1018 (5th Cir. 1969), holding that a guilty plea is a waiver of all non-jurisdictional defects, including a claim defendant was denied a preliminary hearing. Emmett v. Balkcom, 358 F.2d 302 (5th Cir. 1966), holding on a plea of guilty any lack of preliminary hearing disappears; United States v. Coffey, 415 F.2d 119 (10 Cir. 1969), holding guilty plea constitutes waiver of failure to provide counsel when defendant appeared before Commissioner; Macey v. Scafati, 395 F.2d 768 (1st Cir. 1968), cert. denied 393 U. S. 892, 89 S.Ct. 218, 21 L.Ed.2d 174, holding guilty plea entered at time defendant represented by counsel constitutes waiver of absence of counsel at time of arraignment when not guilty plea entered; Lattin v. Cox, 355 F.2d 397 (10th Cir. 1966), holding plea of guilty constitutes waiver of claim accused was denied counsel during interrogation; to the same effect, Abram v. United States, 398 F.2d 350 (3d Cir. 1968). It seems to be the well established rule that a voluntary guilty plea, entered on advice of counsel, is a waiver of all non-jurisdictional defects or errors in the proceedings up to that point. Williams v. Smith, 434 F.2d 592 (5th Cir. 1970); Parker v. United States, 433 F.2d 15 (7th Cir. 1970); Austin v. Perini, 434 F.2d 752 (6th Cir. 1970); Seybold v. Cady, 431 F.2d 683 (7th Cir. 1970); Askew v. St. of Alabama, 398 F.2d 825 (5th Cir. 1968); Corwin v. United States, 423 F.2d 33 (9th Cir. 1970), cert. denied 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271; Moore v. United States, 425 F.2d 1290 (5th Cir. 1970); Parrott v. Brewer, 421 F.2d 1386 (8th Cir. 1970); United States ex rel. De-

---

8. Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, decided 1966, dealing with a similar question, did not decree that counsel must be appointed in a juvenile court, although prior to Kent the Legislature of Virginia had provided counsel should be furnished in a juvenile court for those unable to employ counsel.

Flumer v. Mancusi, 380 F.2d 1018 (2d Cir. 1967); Woodward v. United States, 426 F.2d 959 (3d Cir. 1970); McCord v. Henderson, 384 F.2d 135 (6th Cir. 1967).

In *In re Gault*, the Supreme Court held that the procedure in juvenile court did not comply with due process. Here a court of proper jurisdiction made a determination that Cradle should be tried as an adult. Such determination was made in accordance with law, and at a time Cradle had the assistance of counsel. In *Redmon, supra*, the Court of Appeals, in a case where the proper determination to try the accused as a juvenile or as an adult was made not in the juvenile court, but in the court of record, said that since the "requisite examinations were made prior to petitioner's trial, *due process has been satisfied* regardless of which court instituted them." [Italics added.] This is the situation in Cradle's case.

Cradle complains that he was denied counsel at his juvenile hearing; but that is not sufficient, he must show he has been prejudiced thereby. He has this burden, which he has not carried. Macey v. Scafati, 395 F.2d 768 (1st Cir. 1968), cert. denied 393 U.S. 892, 89 S.Ct. 218, 21 L.Ed.2d 174; United States v. Hoyland, 264 F.2d 346 (7th Cir. 1959), cert. denied 361 U.S. 845, 80 S.Ct. 98, 4 L.Ed.2d 83, rehearing denied 361 U.S. 904, 80 S.Ct. 212, 4 L.Ed.2d 159; Corn v. St. of Oklahoma, 394 F.2d 478 (10th Cir. 1968), cert. denied 393 U.S. 917, 89 S.Ct. 245, 21 L.Ed.2d 203; United States v. Briscoe, 432 F.2d 1351 (D.C. Cir. 1970). To be sure, we cannot say there is a jurisdictional defect here. This very case has been ruled on by the highest court of the State of Virginia.

The mere fact that following the entry of the guilty plea by Cradle, the United States Supreme Court decided *In re Gault*, does not invalidate the guilty plea. This issue was decided by the Supreme Court in Brady v. United States, 397 U.S. 742, at 757, 90 S.Ct. 1463, at 1473, 25 L.Ed.2d 747 it said:

The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. Von Moltke v. Gillies, 332 U.S. 708, 68 S. Ct. 316, 92 L.Ed. 309 (1948), *a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.* [Italics added.]

And, again, in McMann v. Richardson, 397 U.S. 759, at 773, 90 S.Ct. 1441, at 1450, 25 L.Ed.2d 763, the Court again pointed out:

Whether or not the advice the defendant received in the pre-Jackson era would have been different had Jackson then been the law has no bearing on the accuracy of the defendant's admission that he committed the crime.

\* \* \* \* \* \*

It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.

It is ordered that:—

1. Petitioner is not entitled to the relief prayed for and his petition is dismissed.

2. Petitioner may appeal in forma pauperis by filing written notice of such intention within thirty days from this date with the Clerk of this Court at Norfolk, Virginia, and following the procedure prescribed by law. If timely notice be given, the Clerk will forward the papers in this case, together with the state court records, to the Clerk of the United States Court of Appeals for the Fourth Circuit. If timely notice be not given, the Clerk will return the state court papers to the proper state court clerk's office. For the reasons stated above, a certificate of probable cause is denied.

3. The Clerk will send a copy of this Order to the Attorney General of Virginia, the Clerk of the Corporation Court of the City of Norfolk, Thomas Conner, Esquire, counsel for petitioner, and to petitioner.