## Richmond

RONALD DAVID ELKINS v. COMMONWEALTH OF VIRGINIA.

October 9, 1967.

Record No. 6660.

Present, Eggleston, C.J., Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Robert G. Cabell, Jr.,* for plaintiff in error.

*A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

Ronald David Elkins, the defendant, was convicted by the trial court, sitting without a jury, of the crime of robbery and sentenced to serve a term of twenty-five years in the penitentiary, with ten years thereof suspended. The defendant is here upon a writ of error awarded him to the final judgment of the court, entered August 26, 1965.

The evidence shows that the victim of the robbery, John W. Lyles, was, during the evening of June 8, 1965, in the company of the defendant and three servicemen in a tavern in the city of Richmond. When the tavern closed at 11:45 p. m., Lyles, the three servicemen, and the defendant rode in Lyles' car to the 2200 block of Grace Street. Through a ruse, the defendant lured the servicemen away from Lyles. The defendant returned alone and beat Lyles, cutting his head and fracturing his cheekbone and a rib. The defendant then

removed from Lyles' person $1550.00 in cash, and fled the scene. The servicemen returned a few minutes later and found Lyles "badly beaten." They took him to a hospital and notified the police. The defendant was apprehended later the same night in a bus station, and $1410.00 was found concealed in various places about his person.

The defendant makes two contentions on appeal. The first is that the trial court "erred in not granting defense counsel's motion, prior to arraignment of defendant, to have defendant committed for observation and appoint one or more physicians to determine the question of sanity of defendant in accordance with Section 19.1-228 Va. Code Annotated (1950)."

At the time of the defendant's trial, Code, § 19.1-228 was worded as follows:[1]

*"Raising question of sanity; commitment before arraignment.—* If, prior to arraignment of any person charged with crime, either the court or attorney for the Commonwealth or counsel for the accused has reason to believe that such person is in such mental condition that his confinement in a hospital for the insane is necessary for proper care and observation, in order for the court to determine whether such a person is mentally competent to plead and stand trial, the court or the judge thereof may, after hearing evidence or the representations of counsel on the subject, commit such person, if a white person, to the Southwestern State Hospital and, if a colored person, to the Central State Hospital for observation and report, under such limitations as it may order, pending the determination of his mental condition. In any such case the court, in its discretion, may appoint one or more physicians skilled in the diagnosis of insanity, or other qualified physicians, and when any person is alleged to be feeble-minded may likewise appoint persons skilled in the diagnosis of feeble-mindedness, not to exceed three, to examine the defendant before such commitment is ordered, make such investigation of the case as they may deem necessary and report to the court the condition of the defendant at the time of their examination. A copy of the complaint or indictment, attested by the clerk, together with the report of the examining commission, including, as far as possible, a personal history, according to the form prescribed by the State Hospital Board, shall be delivered with such person to the superintendent of the hospital to which

[1] Code, § 19.1-228 was amended by Acts of 1966, Ch. 715, p. 1423, subsequent to the defendant's trial.

he shall have been committed under the provisions of this section. As used in this section the term "court" shall be construed to include courts not of record and courts of record."

It is clear from a reading of the just-quoted Code section that the trial court was vested with discretion with respect to the commitment of the defendant for observation and the appointment of a commission to inquire into his mental condition.

The language of the first sentence of the Code section was that the court "may, after hearing evidence or the representations of counsel on the subject, commit such person . . . for observation and report." The language of the second sentence was that the court, "in its discretion, may appoint" physicians to examine such person and report to the court on his condition. In both instances, the statutory language imported the exercise of discretion by the trial court in deciding whether the circumstances warranted further inquiry into the defendant's mental condition, rather than the imposition of a mandate requiring such action regardless of the circumstances.

The trial court heard the evidence and representations of counsel concerning the defendant's mental condition and exercised the discretion vested in it by the statute under which it was operating. In the exercise of such discretion, the court decided that further inquiry into the defendant's mental condition "would be a futile thing" and that nothing "would be accomplished" thereby.

We will not disturb the trial court's ruling unless it plainly appears that the discretion vested in that court has been abused. *Tilton* v. *Commonwealth*, 196 Va. 774, 779, 85 S. E. 2d 368; *Delp* v. *Commonwealth*, 172 Va. 564, 570-571, 200 S. E. 594; *Wood* v. *Commonwealth*, 146 Va. 296, 305, 135 S. E. 895.

There is nothing in the record to suggest that the trial court abused its discretion. The court had before it a letter dated January 27, 1956, from a doctor at Johns Hopkins Hospital which stated that while the defendant, who was 13 years old at the time, was "functioning on a clearly psychopathic level," he was "not committable either as psychotic or as mentally retarded." The court also heard the testimony of the defendant's mother, a trained nurse, who stated that although the defendant previously had been committed to two mental institutions, her belief was that his "biggest problem" was that "he has no education." She further said that if again committed, "he would come back with the same answer"—that "he knows the difference between right and wrong."

We find no error in the trial court's denial of the motion regarding the defendant's mental condition.

The defendant's other contention is that his conviction "was contrary to the law and evidence in that the evidence did not clearly establish that defendant used force and violence to rob the complaining witness." We find this contention wholly without merit. The evidence of the Commonwealth was overwhelmingly sufficient to prove the offense of robbery in all its essential elements.

The judgment of the trial court will be

*Affirmed.*