COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Lemons
Argued at Richmond, Virginia


BOBBY JOE SIMERLY

OPINION BY
v.    Record No. 3010-97-2          JUDGE DONALD W. LEMONS
                                    MAY 18, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ORANGE COUNTY
Lloyd C. Sullenberger, Judge

Diana H. Wheeler for appellant.

Eugene Murphy, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Bobby Joe Simerly was convicted of rape, abduction with the intent to defile, and malicious wounding.  On appeal, he argues that the trial court erred in refusing to defer sentencing for a mental examination pursuant to Code §§ 19.2-300 and 19.2-176.  We affirm the trial court's refusal to order a mental examination pursuant to Code § 19.2-176; however, we reverse and remand for resentencing after the trial court's compliance with Code § 19.2-300.

I.  BACKGROUND

The victim testified that on April 1, 1997, Simerly attacked her while she was walking on a road near her house.  Simerly dragged her 150 to 200 yards into the woods beside the road and then threw her to the ground.  When she attempted to

get up, Simerly kicked her in the face, pulled off her pants and underwear and raped her.

On September 23, 1997, Simerly was convicted in a bench trial of rape, abduction with the intent to defile, and malicious wounding. Counsel for Simerly requested preparation of a Presentence Investigation Report. A sentencing hearing was scheduled for November 14, 1997. At the hearing, evidence was introduced that Simerly refused to cooperate with the probation officer in the preparation of the presentence report. The investigation conducted by the probation officer revealed that Simerly had been charged with a crime in 1987, and had sought to plead guilty. With respect to that charge, the court had ordered Simerly to undergo a competency evaluation. Simerly had been found incompetent to stand trial and was committed to a mental facility for restoration. After his restoration to competency, Simerly was tried, convicted and served a five-year sentence. Simerly had not provided any of this information to either of the attorneys representing him.

At the sentencing hearing, Simerly's counsel requested that the court defer sentencing until a mental evaluation of him could be completed, pursuant to Code § 19.2-300. Simerly's counsel also requested that the court evaluate Simerly's mental state prior to sentencing pursuant to Code § 19.2-176. The trial court denied both motions. The court sentenced Simerly to life imprisonment for rape, life imprisonment for abduction with

intent to defile, and twenty years imprisonment for malicious wounding.

## II.  CODE § 19.2-300

Code § 19.2-300 provides as follows:

> In the case of the conviction in any circuit court of any person for any criminal offense which indicates sexual abnormality, the trial judge may on his own initiative, or shall upon application of the attorney for the Commonwealth, the defendant, or counsel for defendant or other person acting for the defendant, defer sentence until the report of a mental examination conducted as provided in § 19.2-301 of the defendant can be secured to guide the judge in determining what disposition shall be made of the defendant.

A criminal defendant is entitled as a matter of law to have a presentence report prepared prior to the imposition of his or her sentence.  See Duncan v. Commonwealth, 2 Va. App. 342, 345-46, 343 S.E.2d 392, 394 (1986).  At his sentencing hearing, Simerly's counsel expressed her belief that Simerly's failure to cooperate with the probation officer deprived the court of a "meaningful presentence report."  Simerly's counsel argued that the presentence report failed to inform the court of mitigating factors in his case, and she requested pursuant to Code § 19.2-300 that the court order a mental evaluation before imposing sentence.

Code § 19.2-300 states that in a case involving "sexual abnormality," a trial judge "may on his own initiative" or "shall upon application of the . . . attorney for the defendant"

order a mental examination.  (Emphasis added).  Whether the crimes with which Simerly was charged constituted offenses involving "sexual abnormality," bringing them under the purview of the statute, is the issue before us on appeal.[1]

The term "sexual abnormality" is not defined within Code § 19.2-300.  Certainly, in common parlance it is difficult to imagine anything more sexually "abnormal" than forcible rape.  However, the Commonwealth argues that the sexual act itself must be performed in some "abnormal" way before the statute may be invoked.  "[L]anguage is ambiguous if it can be understood in more than one way . . . [and] divergent interpretations tend to show that a statute's meaning is difficult to ascertain." Virginia-Am. Water Co. v. Prince Wm. Serv., 246 Va. 509, 514, 436 S.E.2d 618, 621 (1993) (citations omitted).  When a statute is ambiguous, a court is permitted to consider extrinsic evidence to determine its meaning, including an analysis of its legislative history.  See id. at 514-20, 436 S.E.2d at 620-24.

Code § 19.2-300 was first enacted in 1950.  A Commission to Study Sex Offenses prepared a report entitled, "The Sex Offender and the Criminal Law," (S. 18 (Va. 1951)) which was presented to the Governor and the General Assembly of Virginia in 1951.  In its report, the commission stated that its purpose was to "study and report upon the statutes of Virginia dealing with sex

---

[1] There was no objection to the timeliness of the motion; consequently, that issue is not before us.

offenders" and "to consider the nature of the problem, the measures in use in other States, and methods which might be employed in this State."  S. 18 at 3.  The commission stated,

> [t]here are three major elements which usually characterize the acts of the dangerous sex offender toward which preventative efforts should be primarily directed.  These are (1) the use of force in the performance of any sexual act against the will of one of the participants (2) a prohibited sexual act where there is a great disparity in age between the participants, whether or not the element of force enters, and (3) the repetitive compulsive nature of the act carried out with heedless disregard of consequences to the offender.

S. 18 at 2.

The report uses the term "dangerous sexual offender" interchangeably with the phrase "one who engages in abnormal sexual behavior."  See S. 18.  We conclude that the legislature intended the term "sexual abnormality" to include all sex offenses committed against the will of a victim in which the use of force is involved.[2]

Code § 19.2-300 first appeared in the supplement to the Code of 1950 and was originally codified at § 53-278.2.  The language of the section read:

---

[2] The commission's report to the legislature stated "the hope . . . of reducing the number of serious sex crimes lies in a proper psychiatric screening of the potential criminal at the stage where abnormal behavior first comes to light.  The authorities believe that latent sexual deviations can in most cases be alleviated with treatment and prevented from developing into more dangerous anti-social activity."  S. 18 at 6.

In the case of the conviction in any court
of record of any person for any criminal
offense which indicates sexual abnormality,
the trial judge may on his own initiative,
or on application of the Commonwealth's
attorney, the defendant, or counsel for
defendant or other person acting for the
defendant, defer sentence until the report
of mental examination of the defendant can
be secured to guide the judge in determining
what disposition shall be made of the
defendant.

The language of Code § 53-278.2 remained unchanged until

1970.  However, in 1970, Code § 53-278.2 was amended to read,

[i]n the case of the conviction in any court
of record of any person for any criminal
offense which indicates sexual abnormality,
the trial judge may on his own initiative,
or <u>shall</u> upon application of the
Commonwealth's attorney, the defendant, or
counsel for defendant or any other person
acting for the defendant, defer sentence
until the report of a mental examination of
the defendant can be secured to guide the
judge in determining what disposition may be
made of the defendant.

Acts of the General Assembly, 1970, c. 62 (emphasis added).

The 1970 change in the language of Code § 53-278.2

reflected legislative intent to eliminate the exercise of

discretion by the trial judge in ordering a mental examination

prior to sentencing when requested by the defense or the

Commonwealth.  In 1975, Code § 53-278.2 was repealed and

recodified at Code § 19.2-300.  Acts of the General Assembly

1975, c. 495.  As recently as 1990, the legislature made modest

changes to Code § 19.2-300, but made no change in the language

eliminating the judge's discretion.  Acts of the General

Assembly 1990, c. 697.  From its inception, the provision has contained no definition of the term "sexual abnormality."

The concurring opinion attempts to draw a distinction between "force" and "violence" in the definition of "sexual abnormality."  Unfortunately, such an analysis may shift the focus of the inquiry from the defendant's conduct to the victim's conduct as demonstrated in the case of Jones v. Commonwealth, 219 Va. 983, 252 S.E.2d 370 (1979), ironically cited in the concurring opinion.  In Jones, the Virginia Supreme Court upheld a rape conviction and observed that "the woman is not required to resist to the utmost of her physical strength, if she reasonably believes resistance would be useless and result in serious bodily injury to her."  Id. at 986, 252 S.E.2d at 372 (citations omitted).  If the question to be answered is whether the defendant's conduct indicates "sexual abnormality," the answer should never rest upon the victim's conduct.  The victim's decision to avoid violence does not make the defendant's conduct any less "abnormal."

Additionally, the attempt to draw the distinction between "force" and "violence" is not found in the most recent enactments of the General Assembly.  The 1999 Session of the General Assembly enacted provisions for the civil commitment of sexually violent predators.  S. 845, 1999 Session (Va. 1999).  Senate Bill 845 was enacted into law on April 7, 1999.  In the definitions section, the legislature defines "sexually violent

offense" to include a "violation of § 18.2-61 [rape], § 18.2-67.1 [forcible sodomy] or § 18.2-67.2 [object sexual penetration] or subdivision A1 of § 18.2-67.3 [aggravated sexual battery]." Code § 18.2-61 defines rape as an act of sexual intercourse with a complaining witness which is accomplished "by force, threat or intimidation" or "through the use of the complaining witness's mental incapacity or physical helplessness" or "with a child under age thirteen as the victim." The offenses of forcible sodomy, object sexual penetration and aggravated sexual battery have similar provisions. The legislature has defined these forcible acts as "violent." Clearly, when dealing with sexually abnormal behavior, the legislature does not make the distinction between "force" and "violence" advanced by the concurring opinion.

We hold that Simerly was convicted of an offense that "indicates sexual abnormality," as that terminology is used in Code § 19.2-300. The record is replete with evidence that Simerly used force to commit the rape. The victim testified that Simerly attacked her, dragged her into the woods, threw her to the ground and kicked her in the face in order to restrain her. The legislature mandated that a person convicted of an offense that "indicates sexual abnormality" be given a mental evaluation upon request of the defense or the Commonwealth to determine whether proper psychiatric treatment could prevent further crimes by the same offender. Because Simerly's counsel

requested that the court defer sentencing until he could be

given a mental examination pursuant to Code § 19.2-300, we

reverse and remand the case for resentencing after the receipt

of the report of mental examination.  Such a report may or may

not have any impact upon the trial judge in a sentencing for

such a brutal crime; however, upon timely motion, the statute

provides the defendant this right.

### III.  CODE § 19.2-176

Code § 19.2-176(A) provides as follows:

> If, after conviction and before sentence of
> any person, the judge presiding at the trial
> finds reasonable ground to question such
> person's mental state, he may order an
> evaluation of such person's mental state by
> at least one psychiatrist or clinical
> psychologist who is qualified by training
> and experience to perform such evaluations.
> If the judge, based on the evaluation, and
> after hearing representations of the
> defendant's counsel, finds clear and
> convincing evidence that the defendant (i)
> is mentally ill, and (ii) requires treatment
> in a mental hospital rather than the jail,
> he may order the defendant hospitalized in a
> facility designated by the Commissioner as
> appropriate for treatment of persons
> convicted of crime.  The time such person is
> confined to such hospital shall be deducted
> from any term for which he may be sentenced
> to any penal institution, reformatory or
> elsewhere.

At Simerly's sentencing hearing, his counsel moved to defer

sentencing until a mental evaluation could be performed, as

authorized by Code § 19.2-176.  The trial court refused to order

an examination, stating that nothing had arisen "that creates reasonable ground to question the defendant's mental state."

The use of the term "may" in the language of Code § 19.2-176 renders a mental examination under this section discretionary. Where the language of a statute authorizing the appointment of an expert to render mental examination prior to trial is clearly discretionary, the denial of a motion to appoint an expert will not be reversed absent an abuse of discretion. See Elkins v. Commonwealth, 208 Va. 336, 337, 157 S.E.2d 243, 244 (1967). We find nothing in the record to support Simerly's argument that the trial court abused its discretion in failing to order a mental examination under Code § 19.2-176.

## IV. CONCLUSION

We affirm the trial court's refusal to order a mental examination pursuant to Code § 19.2-176. We hold, however, that the trial court erred in refusing to order a mental examination pursuant to Code § 19.2-300, and reverse for the limited purpose of allowing the court to resentence Simerly after a mental examination pursuant to this section has been completed.

<u>Affirmed in part,
and reversed in part
and remanded for
resentencing.</u>

Benton, J., concurring.

I agree with the majority's holding that the trial judge erred in refusing to order a mental examination of Bobby J. Simerly pursuant to Code § 19.2-300. I separately concur, however, because I believe the majority opinion lowers the bar too drastically when it holds that a sexual assault involving the use of force, which need only be slight in certain circumstances, see Jones v. Commonwealth, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979), proves "sexual abnormality" sufficient to trigger the application of Code § 19.2-300. In my view, this offense falls within the ambit of "sexual abnormality" because of the nature and degree of violence that Simerly employed.

To the extent that the Report of the Commission To Study Sex Offenders (S. 18 1951) is helpful in determining this issue, I believe it primarily focused upon those offenders who "are aggressive and carry out their heinous crimes with a complete disregard of the consequences both to the victim and the aggressor." S. 18 at 1. The report concerned only "a low percentage [of sex offenders] -- three to five percent -- [who] are dangerous," id. at 4, and it seeks to differentiate between persons who may be described generally as "sexual deviates" and persons who are "dangerous sex offender[s]." Id. at 1-2, 4. The report further noted that "[t]hose who are sent to the mental hospitals under the recommendations of this report will have engaged in acts of violence." Id. at 8 (emphasis added).

The report focused its recommendations upon offenders "convicted of a crime for which the punishment may be death or life imprisonment." Id. at 5, 7.

The evidence proved that Simerly grabbed the victim's hair, forcibly dragged her into the woods, kicked her in the face, and raped her while she was physically restrained. By urging a greater limitation than that accepted by the majority, I do not intend to suggest that a forcible sexual assault committed without aggravated violence is less culpable than one committed with aggravated violence. The issue before us is not whether the offense is somehow mitigated on the basis of the force employed. The issue is merely whether the offender should be subjected to a mental examination before sentencing. I would hold that the violence which accompanied this rape made the "offense [one] which indicates sexual abnormality." Code § 19.2-300.

For these reasons, I agree with the majority opinion that we should reverse and remand for a mental examination and resentencing pursuant to Code § 19.2-300.