# COURT OF APPEALS OF VIRGINIA

## Record No. 1372-25-3

COMMONWEALTH OF VIRGINIA
v.
JAMES TYLER MYERS

Present: Judges Malveaux, Athey and Frucci

Argued at Lexington, Virginia

Opinion Issued June 23, 2026

### FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
Timothy W. Allen, Judge

Amanda L. Lavin, Assistant Attorney General (Jason S. Miyares,[1] Attorney General; Theophani K. Stamos, Deputy Attorney General; Erin D. Whealton, Senior Assistant Attorney General/Chief, on briefs), for appellant.

Steven P. Milani for appellee.

### PUBLISHED OPINION BY
### JUDGE MARY BENNETT MALVEAUX

The Commonwealth petitioned the circuit court to civilly commit James Tyler Myers as a sexually violent predator following his conviction for carnal knowledge of a minor between 13 and 15 years of age. The circuit court denied the petition on the ground that carnal knowledge is not a sexually violent act under the terms of the Sexually Violent Predators Act ("the Act"), Code §§ 37.2-900 to -921. The Commonwealth appeals, arguing that the circuit court erred in its interpretation of the Act and in holding that Myers is not a sexually violent predator as defined by the Act. For the following reasons, we reverse the circuit court's judgment.

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

## I. BACKGROUND

"The pertinent facts are not in dispute and, pursuant to familiar principles, will be viewed in the light most favorable" to Myers, the prevailing party below. *DeMille v. Commonwealth*, 283 Va. 316, 318 (2012).

In 2021, Myers entered into a plea agreement and was convicted of carnal knowledge of a minor, in violation of Code § 18.2-63(A).[2] Based on this conviction for a sexually violent offense as defined by the Act, the Commonwealth petitioned for Myers's civil commitment as a sexually violent predator. Pursuant to the Act, the circuit court scheduled a hearing to determine if there was probable cause to adjudicate Myers to be a sexually violent predator.

Prior to the hearing, Dr. Ilona Gravers, a licensed clinical psychologist, interviewed Myers, reviewed his clinical and criminal records, and submitted a written evaluation to the circuit court opining on whether Myers satisfied the sexually violent predator criteria. Dr. Gravers concluded that Myers satisfied the criteria based on his conviction for a sexually violent offense; her diagnosis of antisocial personality disorder; and her conclusion that Myers's disorder affected his volitional and emotional capacity, making it difficult for him to control his predatory behavior and likely that he would engage in sexually violent behavior. Gravers opined that Myers presented "a *well above average* probability of sexually violent recidivism."

At the hearing, the circuit court found probable cause to believe that Myers was a sexually violent predator. The circuit court then scheduled a trial on the question of Myers's

---

[2] At the time of the offense, Myers was 24 years old and the victim was 14 years old. Under the plea agreement, Myers also pleaded guilty to three counts of possession of child pornography, in violation of Code § 18.2-374.1:1.

status and potential civil commitment. It also appointed Dr. Craig S. King, a licensed clinical psychologist, as Myers's expert.[3]

Dr. King filed his written evaluation with the circuit court prior to trial. Like Dr. Gravers, Dr. King noted Myers's conviction for a sexually violent offense and diagnosed Myers with antisocial personality disorder. But Dr. King was unable to opine on whether Myers, because of his personality disorder, would find it difficult to control his predatory behavior, thus making it likely that he would engage in sexually violent acts. Dr. King noted that his "difficulty with answering this question is that 'predatory behavior' is not statutorily defined" by the Act; "[t]herefore, I cannot determine if his actions were predatory." Dr. King also took issue with the Act's classification of carnal knowledge of a minor as a sexually violent offense. Noting that "Myers has not been charged with or convicted of a sex offense that involved violence," he opined that "[w]hile Carnal Knowledge is statutorily defined as a Sexually Violent Offense, with all due respect to the SVP statute, it does not make sense to define consensual, but illegal sexual conduct as a violent sex offense." This was "especially [so] since Carnal Knowledge, by definition, does not involve force or violence." Dr. King further opined that Myers's "offending was minor compared to those designated as Sexually Violent Predators" and that "[c]linically, the evidence does not support a finding that [he] is likely to commit sexually violent acts in the future." While Myers's "comprehensive risk assessment indicate[d]" that he was "in a category of sex offenders who are in the Well Above Average Risk range for committing sex offenses in the future," Dr. King ultimately concluded that "it is most likely, if he commits another sex offense, that it will be a non-sexually violent offense as he does not have a pattern of committing sexually violent acts."

---

[3] *See* Code § 37.2-907(A) (providing for appointment of "expert assistance" upon a finding of probable cause that an individual is a sexually violent predator).

At trial, Dr. Gravers testified and reiterated her diagnosis of Myers's antisocial personality disorder, which she characterized as "one of the two strongest risk factors for future sexual offending." She explained that because of his condition, when Myers "experiences a sexual urge he acts on it, regardless of the consequences. So it may be consensual, it may not be consensual. . . . He does what he wants to do when he wants to do it, really without any regard to the effects of his behavior." Gravers opined that Myers selected child victims because "[h]e wanted to do what he wanted to do. Adolescents or teenagers are more easily manipulated." Although Myers would not "cur[e] or grow[] out of" his disorder, he could "learn how to control it" through treatment. Dr. Gravers reiterated that because of Myers's disorder, which "make[s] it difficult for him to control his predatory behavior," he was "likely . . . to commit another sexually violent act." During cross-examination, Dr. Gravers agreed that if Myers reoffended, "it would probably be another carnal knowledge type of offense," stating that she believed the offense would "be against a teenager." She also noted that because Myers's "manner or MO is manipulation," he was unlikely to use actual force or violence in committing another sexual offense.

Upon the conclusion of the Commonwealth's evidence, Myers moved to strike. He acknowledged he had been convicted of carnal knowledge of a minor and that carnal knowledge was defined as a "sexually violent offense" by Code § 37.2-900 of the Act. But Myers observed that the language of the carnal knowledge statute, Code § 18.2-63, specifies that the offense occurs "without the use of force." He also noted Dr. Gravers's testimony that if he reoffended, he was not likely to engage in sex offenses "that involve[] the use of actual force or violence." Accordingly, Myers argued, because Code § 37.2-900 defines a sexually violent predator as one who is likely to reoffend by engaging in a "sexually violent act," but does not define the term "sexually violent act," by applying the "common dictionary definition" to his predicate offense

- 4 -

and Dr. Gravers's testimony, he could not be found a sexually violent predator.  The circuit court characterized Myers's argument as an "interesting [one]" that asked it to "differentiat[e] between" a defined term and an undefined term in Code § 37.2-900, but denied the motion to strike.

Dr. King then testified on Myers's behalf.  He reiterated his diagnosis of antisocial personality disorder and acknowledged Myers's conviction for a sexually violent offense, but maintained that Myers "does not have a pattern of sexual violence."  Dr. King noted, however, that his determination of "lack of violence" was made "clinically, not legally" because "clinically he's not likely to commit sexual violence against another person."  Regardless, during cross-examination, Dr. King acknowledged his conclusion that Myers was well above average in his risk of committing future sexual offenses.

In closing argument, Myers again contended that "under the dictionary definition," a "sexual[ly] violent act would require the use of force."  The Commonwealth disagreed, contending that Myers "wants the Court to find that his crime doesn't meet this statute and that his future dangerousness" based on carnal knowledge recidivism "doesn't meet the statute ever." Further, the Commonwealth argued, "if we're looking at force being dispositive here, then that would disqualify several of these code sections that the Legislature have defined as sexually violent offense[s]" from serving as bases for a sexually violent predator determination.

The circuit court found that the first two elements had been satisfied to find Myers a sexually violent predator: Myers had been convicted of a sexually violent offense and both experts diagnosed him with a personality disorder.  But adopting Myers's argument, the circuit court then found that there was insufficient evidence that Myers was a sexually violent predator, because his history "doesn't include particularly violent actions."  The circuit court noted that

"because of the nondefining of the term of 'sexually violent act.'. . . I'm not going to make that determination that he's a sexually violent predator."

The circuit court entered an order denying the Commonwealth's petition for civil commitment, and this appeal followed.

## II. ANALYSIS

### A. The Sexually Violent Predators Act

The Act "sets forth the statutory scheme that permits a person convicted of a sexually violent offense to be declared a sexually violent predator and committed to involuntary secure inpatient treatment in a mental health facility after release from prison." *Gibson v. Commonwealth*, 287 Va. 311, 315 (2014). "When a proceeding under the [Act] reaches the trial stage, the fact finder must determine 'whether, by clear and convincing evidence, the respondent is a sexually violent predator.'" *Id.* at 316 (quoting Code § 37.2-908(C)). "Upon such a finding, the [circuit] court then determines whether to commit the respondent or to continue the trial to receive additional evidence regarding possible alternatives to commitment." *Id.*

Code § 37.2-900 provides the pertinent definitions for circuit courts to use in making sexually violent predator determinations. The statute defines a "[s]exually violent predator" as "any person who (i) has been convicted of a sexually violent offense . . . ; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." *Id.* The statute further defines a "[s]exually violent offense" as

> a felony under (i) former [Code] § 18-54, former [Code] § 18.1-44, subdivision A 5 of [Code] § 18.2-31, [Code] § 18.2-61, [Code §] 18.2-67.1, or [Code §] 18.2-67.2; (ii) [Code§]§ 18.2-48(ii), 18.2-48(iii), [Code §] 18.2-63, [Code §] 18.2-64.1, or [Code §] 18.2-67.3; (iii) subdivision A 1 of [Code] § 18.2-31 where the abduction was committed with intent to defile the victim; (iv) [Code] § 18.2-32 when the killing was in the commission of, or attempt to commit rape, forcible sodomy, or inanimate or

- 6 -

animate object sexual penetration; (v) the laws of the
Commonwealth for a forcible sexual offense committed prior to
July 1, 1981, where the criminal behavior is set forth in [Code]
§ 18.2-67.1 or [Code §] 18.2-67.2, or is set forth in [Code]
§ 18.2-67.3; or (vi) conspiracy to commit or attempt to commit any
of the above offenses.

Code § 37.2-900. Additionally, the statute defines a "'[m]ental abnormality' or 'personality

disorder'" as "a congenital or acquired condition that affects a person's emotional or volitional

capacity and renders the person so likely to commit sexually violent offenses that he constitutes a

menace to the health and safety of others." *Id.*

## B. Sexually Violent Acts

The Commonwealth argues that the circuit court erred in holding that carnal knowledge

of a minor, a sexually violent offense as defined in Code § 37.2-900, is not a sexually violent act

as defined in the same statute. It contends that under the plain language of Code § 37.2-900, the

definition of "sexually violent acts" encompasses those crimes defined as sexually violent

offenses, including carnal knowledge of a minor. This is so, the Commonwealth argues, because

"[b]y definition, any *actus reus* that would result in a conviction for a sexually violent offense

must be a sexually violent act."

"Statutory construction is a question of law which we review de novo." *Ferrara v.

Commonwealth*, 299 Va. 438, 445 (2021) (quoting *Parker v. Warren*, 273 Va. 20, 23 (2007)).

"The primary objective of statutory construction is to ascertain and give effect to legislative

intent." *Jordan v. Commonwealth*, 72 Va. App. 1, 7 (2020) (quoting *Commonwealth v. Zamani*,

256 Va. 391, 395 (1998)). "Therefore, courts must construe a statute 'with reference to its

subject matter, the object sought to be obtained, and the legislative purpose in enacting it; the

provisions should receive a construction that will render it harmonious with that purpose rather

than one which will defeat it.'" *Id.* (quoting *Esteban v. Commonwealth*, 266 Va. 605, 609

(2003)). "[W]hen interpreting a statute, the Court "'presume[s] that the legislature chose, with

care, the words it use[d]" when it enact[ed the] statute.'" *Green v. Commonwealth*, 72 Va. App. 193, 202 (2020) (second, third, and fourth alterations in original) (quoting *Rives v. Commonwealth*, 284 Va. 1, 3 (2012)). "'When the language of a statute is unambiguous, we are bound by the plain meaning of that language' and must 'give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity.'" *Bland-Henderson v. Commonwealth*, 303 Va. 212, 218 (2024) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). And even where "a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute." *Jordan*, 72 Va. App. at 7 (quoting *Kozmina v. Commonwealth*, 281 Va. 347, 349-50 (2011)).

We first consider the legislative intent of the Act of which Code § 37.2-900 is a part, and which permits the civil commitment of persons deemed sexually violent predators. Under the Act, the Commonwealth may petition for a person who commits a "sexually violent offense" as defined by the Act to be deemed a sexually violent predator, thus permitting their civil commitment beyond the time when they would be released from incarceration. *See* Code §§ 37.2-906 to -908 (providing procedures for Commonwealth's petitions and trial court adjudications of such petitions); Code § 37.2-909 (providing for civil commitment). And as the definitions provided in Code § 37.2-900 make clear, a key consideration in making a sexually violent predator determination is whether the individual suffers from a mental abnormality or personality disorder that affects their emotional and volitional capacity, such that they have difficulty controlling their predatory behavior of sexual violence. Therefore, by authorizing the ongoing commitment of such a person, "[t]he [Act] was codified by the General Assembly as a civil statute" that "'create[d] . . . a civil commitment scheme designed to protect the public from

harm.'" *Shivaee v. Commonwealth*, 270 Va. 112, 125 (2005) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)) (considering the constitutionality of the Act).

The Act has a second, complementary purpose: to provide custodial care and treatment to sexually violent predators "until such time as the [individual's] mental abnormality or personality disorder has so changed that the [individual] will not present an undue risk to public safety." Code § 37.2-909(A). This purpose is facilitated when the individual, rather than being further committed to the custody of the Department of Corrections, is instead placed in the custody of the Department of Behavioral Health and Developmental Services and supervised by the Office of Sexually Violent Predator Services. *See id.* (providing for the Department's "control, care, and treatment" of sexually violent predators).

Taken together, these two purposes make clear the legislative intent of the Act— protection of the public and treatment of sexually violent predators who endanger the public. And effectuating this intent turns on the sexually violent predator determination under the definitions provided by Code § 37.2-900 as subject to the clear and convincing evidentiary standard required by Code § 37.2-908(C). Ultimately, "[t]he object of the[se] definitions and proof requirements is 'to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.'" *Shivaee*, 270 Va. at 124 (quoting *Kansas v. Crane*, 534 U.S. 407, 413 (2002)).

At issue here, Code § 37.2-900 defines a "[s]exually violent predator" as "any person who . . . has been convicted of a *sexually violent offense*" and "because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in *sexually violent acts*." (Emphases added). As noted above, we must consider how to construe the words chosen by the General Assembly for Code § 37.2-900 so as to give

the statute "a construction that will render it harmonious with [the Act's] purpose rather than one which will defeat it," *Jordan*, 72 Va. App. at 7 (quoting *Esteban*, 266 Va. at 609), and that "'give[s] reasonable effect to the words used' in the [statute]" so as to accomplish the legislative purposes of the Act, *Green*, 72 Va. App. at 202 (quoting *Johnson v. Commonwealth*, 37 Va. App. 634, 639 (2002)). In doing so, we consider the plain language of Code § 37.2-900 and agree with the Commonwealth's argument that the term "sexually violent act[s]" as used in the statute necessarily encompasses the term "sexually violent offense[s]." An "act" is merely "[s]omething done or performed, esp. voluntarily; a deed." *Act*, *Black's Law Dictionary* (12th ed. 2024); *see also Eley v. Commonwealth*, 70 Va. App. 158, 165 (2019) (noting that in ascertaining the meaning of statutory terms undefined by the legislature, "dictionary definitions . . . may be consulted"). And an "offense" necessarily comprises "deed[s]" and "[]thing[s] done or performed." *See Offense*, *Black's Law Dictionary*, *supra* (defining an "offense" as "a violation of the law"); *see also Actus Reus*, *id.* ("The wrongful deed that comprises the physical components of a crime . . . ; a forbidden act."); 4 William Blackstone, *Commentaries on the Laws of England* *21 (1769) ("[A]n *overt* act . . . is necessary, in order to demonstrate the depravity of the will, before [a] man is liable to punishment."). Since the General Assembly has defined the deeds comprising the enumerated predicate offenses as "sexually violent" in nature, regardless of whether or not they involve the use of actual force or violence,[4] it follows that the

---

[4] The "[s]exually violent offense[s]" enumerated by Code § 37.2-900 include a wide range of offenses that do not require proof of actual force or violence to convict. *See* former Code § 18-54 (carnal knowledge of a female 16 years of age or more against her will, by force, or of an institutionalized female under 16 years of age, or of a non-institutionalized female 14 to 16 years of age who consents to the carnal knowledge); former Code § 18.1-44 (same); Code § 18.2-61 (rape through sexual intercourse with a child under the age of 13, or against the complaining witness's will when accomplished by force, threat or intimidation, or when accomplished through use of the complaining witness's mental incapacity or physical helplessness); Code § 18.2-67.1 (forcible sodomy committed under the same parameters as rape pursuant to Code § 18.2-61); Code § 18.2-67.2 (object sexual penetration, committed under the same parameters as rape pursuant to Code § 18.2-61); Code § 18.2-48(ii) and (iii) (abduction

"act[s]" also characterized as "sexually violent" when defining a sexually violent predator include those predicate offenses.[5] Such a reading is consistent with the imperative that we consider "the entire statute . . . to place its terms in context to ascertain their plain meaning . . . because 'it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (first alteration in original) (quoting *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012)).

In reaching this conclusion, we rely on the legislative intent that the Act "protect the public from harm." *Shivaee*, 270 Va. at 125 (quoting *Hendricks*, 521 U.S. at 361). As noted above, the Act effectuates this intent by "distinguish[ing] the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* at 124 (quoting *Crane*, 534 U.S. at 413). The Act is thus concerned with preventing sexual recidivism, rather than "typical" recidivism for "ordinary criminal" matters, by those persons whose mental condition renders them so likely to sexually offend again that they must be civilly committed. *See* Code § 37.2-900 (defining the "'[m]ental abnormality' or 'personality disorder'" required for

with intent to defile or abduction of a child under 16 years of age for purposes of prostitution or concubinage, where abduction is elsewhere defined as occurring "by force, intimidation, or deception" (*see* Code § 18.2-47(A))); Code § 18.2-63 (carnal knowledge of a minor without the use of force); Code § 18.2-64.1 (carnal knowledge, without the use of force, of certain minors by those providing services to juveniles through the juvenile justice system); Code § 18.2-67.3 (aggravated sexual battery through the sexual abuse of certain complaining witnesses, including those less than 13 years of age and those where the sexual abuse is accomplished against the will and by force, threat or intimidation); "conspiracy to commit or attempt to commit any of the above offenses," Code § 37.2-900.

[5] While we conclude that the "[s]exually violent offense[s]" enumerated by Code § 37.2-900 qualify as "sexually violent acts" for purposes of the statute's definition of a sexually violent predator, we do not address a question that is not before us in this appeal, i.e., what additional, sexually violent acts beyond the enumerated predicate offenses support a sexually violent predator determination.

- 11 -

a sexually violent predator determination as affecting a person's "emotional or volitional capacity" such that they are "render[ed] . . . so likely to commit *sexually violent offenses* that [they] constitute[] a menace to the health and safety of others" (emphasis added)). The public's protection from such a "menace" could not be accomplished if, after being convicted of a statutorily defined sexually violent offense, a person would be ineligible for civil commitment as a sexually violent predator at risk of sexually violent recidivism because their predicate offense, if likely to be repeated, would not qualify as a "sexually violent act." That is, the effectiveness of the Act in protecting the public from sexual recidivism would be significantly undermined if predicate offenses could not qualify as "sexually violent acts" because they did not involve the employment of actual force or violence. Additionally, because some sexually violent offenses as defined by the statute encompass a range of conduct that may or may not involve the use of actual force or violence, including one form of the offense under the definition of a "sexually violent act" while excluding the other would arbitrarily elevate one violation of a statute above another for purposes of making a sexually violent predator determination. Stated differently, for the Act to be effective in protecting the public from the risk of sexually violent recidivism, each "sexually violent offense" potentially triggering a sexually violent predator evaluation must also qualify as a "sexually violent act" that could support civil commitment.

For the above reasons, we conclude that the circuit court erred in its interpretation of the term "sexually violent acts" under Code § 37.2-900.

### C. Sufficiency of the Evidence

The Commonwealth argues that the circuit court erred in finding that Myers is not a sexually violent predator as defined by Code § 37.2-900. It contends that the evidence is "clear and unrefuted" that Myers was convicted of a "sexually violent offense"—specifically, carnal knowledge of a minor—and diagnosed with a "'[m]ental abnormality' or 'personality

- 12 -

disorder'"—specifically, antisocial personality disorder. It also notes the circuit court stated that if it adopted the Commonwealth's argument that the definition of the term "sexually violent acts" includes "sexually violent offense[s]," the court "would find in favor of [the Commonwealth] and make a determination that [Myers is] a sexually violent predator."

The Act "requires proof 'by clear and convincing evidence'" that a person is a sexually violent predator before that person may be civilly committed. *Benefield v. Commonwealth*, 82 Va. App. 561, 571 (2024) (quoting Code § 37.2-908(C)). "In reviewing the sufficiency of the evidence, '[w]e consider the evidence in the light most favorable to the . . . prevailing party in the circuit court, and we accord the [prevailing party] the benefit of all reasonable inferences deducible from the evidence.'" *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018) (alterations in original) (quoting *Riley v. Commonwealth*, 277 Va. 467, 482-83 (2009)). We will affirm the circuit court's judgment "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." *Id.* (quoting Code § 8.01-680).

Here, the circuit court found there was "no doubt" that Myers had been convicted of a sexually violent offense, i.e. carnal knowledge of a minor. It also found that "both the experts"—Dr. Gravers and Dr. King—"came out and said" that Myers "has a diagnosable mental abnormality, antisocial personality disorder." And on brief, Myers concedes it is "undisputed" both that he was "convicted of the sexually violent offense of carnal knowledge" and that he "suffers from antisocial personality disorder, as both expert witnesses diagnosed him as suffering from that personality disorder." As discussed in Section II.B. above, we hold that the circuit court misinterpreted the language of Code § 37.2-900 to read into the term "sexually violent acts" the requirement that a sexually violent predator is likely to reoffend by committing sexual acts involving actual force or violence. We conclude, therefore, that the circuit court's finding that Myers is not a sexually violent predator is plainly wrong because of the application of an

- 13 -

erroneous statutory interpretation to the undisputed facts of Myers's prior conviction and his diagnosed personality disorder.  Accordingly, we remand to the circuit court for it to apply the proper interpretation of "sexually violent acts" as found in Code § 37.2-900 to the undisputed facts of this case, make a new sexually violent predator determination, and conduct any further proceedings required by the Act upon its determination.

### III.  CONCLUSION

For the foregoing reasons, we reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

Athey, J., dissenting.

I agree with the majority that, in ascertaining the meaning of a statutory phrase, our job is to discern the General Assembly's intent. Unlike the majority, however, I conclude that the plain meaning of the words used in the Sexually Violent Predators Act ("SVPA") is the best reflection of the General Assembly's intent. Hence, I must respectfully dissent from the majority.

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Commonwealth v. Amerson*, 281 Va. 414, 419 (2011) (quoting *Commonwealth v. Morris*, 281 Va. 70, 76 (2011)). "We evaluate statutory language in the context 'of the entire statute' because 'it is our duty to interpret the several parts of a statute as a consistent and harmonious whole.'" *Flores v. Commonwealth*, 82 Va. App. 249, 258 (2024) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). And "when different words are used in a statute, each must be given its own meaning if possible." *Johnson v. Commonwealth*, 53 Va. App. 608, 613 (2009).

As defined in the SVPA, a "sexually violent predator" ("SVP") is

> any person who (i) has been convicted of a sexually violent offense, or has been charged with a sexually violent offense and is unrestorably incompetent to stand trial pursuant to § 19.2-169.3; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, *which makes him likely to engage in sexually violent acts*.

Code § 37.2-900 (emphasis added). The statute defines "sexually violent offense" to include carnal knowledge. *See id.* It further defines "'[m]ental abnormality' or 'personality disorder'" as "a congenital or acquired condition that affects a person's emotional or volitional capacity and renders the person so *likely to commit sexually violent offenses* that he constitutes a menace to the health and safety of others." *Id.* (emphasis added). The statute fails to provide a definition for the phrase "sexually violent acts." *See id.*

- 15 -

However, when reading the definition of SVP as a whole, *see Flores*, 82 Va. App. at 249, it becomes apparent that a "sexually violent act[]" must be different than a "sexually violent offense." Indeed, a respondent must be both "likely to commit sexually violent offenses" (as required by the definition of "'[m]ental abnormality' or 'personality disorder'") and also "likely to engage in sexually violent acts." *See Squire v. Commonwealth*, 278 Va. 746, 752 (2009) ("[T]he General Assembly in defining a SVP considered the existence of a mental abnormality or personality disorder as an element separate from the likelihood of engaging in sexually violent acts."). In addition, it is a well-settled rule of statutory interpretation that different phrases used in the same statute are presumed to have different meanings. *See Hodges v. Dep't of Soc. Servs., Div. of Child Support Enf't*, 45 Va. App. 118, 126 (2005) (en banc) ("The General Assembly is presumed to have given the two different phrases two different meanings."); *Johnson*, 53 Va. App. at 613.

As a result, I am compelled to conclude that the phrase "sexually violent acts" has a different meaning than the statutorily defined phrase "sexually violent offense." Otherwise, the use of the phrase—if read to be a mere substitution for "sexually violent offense"—would be superfluous. *See Cook v. Commonwealth*, 268 Va. 111, 114 (2004) ("Words in a statute should be interpreted, if possible, to avoid rendering words superfluous."). Moreover, in my view, the phrase does not merely represent the actus reus of any sexually violent offense. To interpret the phrase in this manner would also render it superfluous in my judgment, as an SVP must already be "likely to commit sexually violent offenses," Code § 37.2-900, and the likelihood of engaging in the actus reus of a sexually violent offense is therefore subsumed in that calculus because it is an element of the offense. *See id.*[6]

---

[6] If the General Assembly had intended that the two phrases have, in effect, the same meaning, it could have opted to define "sexually violent acts" to include "conduct that constitutes the commission of a sexually violent offense." *See* Wis. Stat. § 980.01(1b) ("'Act of

Further, since the phrase "sexually violent acts" is undefined in the statute, the plain meaning of that phrase controls absent ambiguity. *See Amerson*, 281 Va. at 419. As applied to this case, the ordinary meaning of the word "violent," as Myers contends, connotes the use of force. *See Violent*, *Black's Law Dictionary* 1887 (12th ed. 2024) ("Of, relating to, or involving strong physical force."). Hence, I would have held that a "sexually violent act" must be a forcible act of a sexual nature. *Cf. Simerly v. Commonwealth*, 29 Va. App. 710, 716-17 (1999) (opining that the General Assembly, in enacting the initial version of the SVPA that included only forcible sex crimes as sexually violent offenses, did not distinguish "between 'force' and 'violence'").

"[W]e must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). This interpretation does not lead to an absurd result. *See Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 280 (2016) (stating that "the anti-absurdity principle" "applies in situations in which a purely literal reading forces the statutory text into an 'internally inconsistent' conflict or renders the statute 'otherwise incapable of operation'" (quoting *Butler v. Fairfax Cnty. Sch. Bd.*, 291 Va. 32, 37 (2015))). It is reasonable to infer that, as Myers contends, the General Assembly intended for carnal knowledge to be a "gateway sexual offense" that triggers SVP proceedings to determine whether the respondent is likely to escalate his misconduct into acts of sexual *violence*.

Here, the expert evidence adduced at the commitment hearing, viewed in the light most favorable to Myers, established only that he was likely to commit carnal knowledge again through manipulation. However, by definition, carnal knowledge is a non-violent offense

sexual violence' means conduct that constitutes the commission of a sexually violent offense."). But it did not.

- 17 -

because it does not require the use of force. *See* Code § 18.2-63 (expressly requiring that carnal knowledge be committed "without the use of force"); *Colbert v. Commonwealth*, 47 Va. App. 390, 397-98 (2006) (listing carnal knowledge as an example of a "non-violent sexual offense[]"); *see also United States v. Thornton*, 554 F.3d 443, 448-49 (4th Cir. 2009) (noting that "the Virginia carnal knowledge offense, by definition, categorically does not involve the use of force").[7] As a result, I would have agreed with the circuit court that the Commonwealth did not produce sufficient evidence to prove an essential predicate: that Myers was likely to engage in "sexually violent acts." I would have found that the circuit court was not plainly wrong in finding that although Myers was likely to engage in carnal knowledge, he was not likely to engage in sexually *violent* acts. *See Squire*, 278 Va. at 749. Thus, because I would have held that the circuit court did not err by concluding that Myers was not an SVP, I respectfully dissent.

---

[7] The Commonwealth raises two counterpoints worthy of discussion. First, the Commonwealth contends that, because a child under the age of 15 cannot legally consent to sexual intercourse, carnal knowledge necessarily involves constructive force. To be sure, *Buzzard v. Commonwealth*, 134 Va. 641, 651 (1922), stands for this proposition. *See also McBride v. Commonwealth*, 44 Va. App. 526, 531-32 (2004). But the Commonwealth's position ignores the fact that the modern carnal knowledge statute, Code § 18.2-63, expressly states that the crime is achieved "without the use of force." *See McBride*, 44 Va. App. at 531 (stating that the difference between carnal knowledge and rape is that the latter is accomplished by force); *cf. Nelson v. Commonwealth*, 73 Va. App. 617, 625 (2021) (interpreting "force" as used in "all species of sexual offenses that require proof of force" to mean actual or constructive force).

Second, the Commonwealth asserts that taking Myers's argument to its logical conclusion would mean that an act of rape achieved by incapacitation would not be a sexually violent act because no force would be involved. But this ignores the fact that force may be actual or constructive. *See id.* ("Constructive force is established 'in the context of [such] crimes' if the act was undertaken 'without the victim's consent' and 'against [the] victim's will.'"(alterations in the original) (quoting *Martin v. Commonwealth*, 272 Va. 31, 35 (2006))). Notably, at least one other sexually violent offense—aggravated sexual battery—may be characterized as violent in some scenarios and non-violent in others. *See* Code § 18.2-67.3 (criminalizing acts of sexual abuse achieved through actual or constructive force but also sexual abuse "committed by a parent, step-parent, grandparent, or step-grandparent" against a child "at least 13 but less than 18 years of age"). This highlights the fact-intensive inquiry that, in my view, a circuit court must engage in to determine whether a respondent is likely to engage in sexually violent acts.